[No. 36359.   En Banc.   June 13, 1963.]

RED CEDAR SHINGLE BUREAU, *Respondent*, v. THE STATE OF WASHINGTON, *Appellant*.*

*The Attorney General* and *James A. Furber, Assistant*, for appellant.

*Olwell, Boyle & Hattrup*, for respondent.

FINLEY, J.—The Red Cedar Shingle Bureau initiated this action in the Superior Court for Thurston County for a refund of business and occupation taxes assessed against

* Reported in 382 P. (2d) 503.

the Bureau and paid by it under protest to the State Tax Commission. The Bureau and the Tax Commission stipulated as to the facts. The matter as submitted to the trial court involved solely a question of interpretation of certain statutory provisions pertaining to the business and occupation tax. The trial court resolved these questions in favor of the taxpayer and ordered a refund. The Tax Commission has appealed.

The Red Cedar Shingle Bureau was incorporated in 1926 as a nonprofit corporation under the laws of the State of Washington. Its purposes and operations classify it generally as a "trade association." Its office and principal place of business is in Seattle. Additional pertinent facts (excerpted verbatim from the agreed stipulation of facts entered into by the parties relative to the trial in the Superior Court for Thurston County) are as follows:

"Prior to 1926, trade promotion and related activities had been conducted by the Rite-Grade Shingle Association and earlier by a branch of the West Coast Lumbermen's Association. By 1926, however, the need for expanded trade promotional activities, a nationwide increase in anti-shingle legislation, particularly in respect to municipal ordinances, and the lack of uniform grade standards, motivated the manufacturers of red cedar shingles in disbanding the Rite-Grade Shingle Association and organizing the Bureau. Prior to 1926 the red cedar shingle industry, to a large extent, had no uniform grade standard and no inspection and certification service. The efforts of the Bureau culminated in 1931 in a standardization of grades reflected through the adoption of a Commercial Standard for No. 1 grade red cedar shingles by the National Bureau of Standards, a division of the United States Department of Commerce. This Commercial Standard has been revised from time to time and in 1955 a Commercial Standard was approved for machine-grooved shakes. The Bureau secured a trademark for it label, which is placed on each bundle of shingles manufactured by member mills, and this trademark, 'Certigrade', together with the companion trademark 'Certigroove', attached to each bundle or carton of machine-

grooved shakes manufactured by members of the Bureau, is a standard of quality throughout the United States.

"*At all times since its incorporation, the Bureau has been and is in the business of promoting trade*, and, until March 14, 1958, its membership was composed primarily of manufacturers of red cedar shingles. On March 14, 1958, the By-Laws of the Bureau were revised to enlarge its membership so as to include as members manufacturers of machine-grooved shakes.

"Throughout its existence the membership of the Bureau has necessarily varied from time to time. With the exception of a very minute percentage, all red cedar shingles and machine-grooved shakes which are manufactured from red cedar are produced solely within the state of Washington and Oregon and the Province of British Columbia. It is estimated that at the present time the membership of the Bureau represents approximately 95% of all red cedar shingles and machine-grooved shakes manufactured from red cedar. As of September, 1960, the membership of the Bureau was composed of 116 manufacturers, of which 53 were situated within the State of Washington, 27 within the State of Oregon, and 36 within the Province of British Columbia, Canada. Approximately 50% of all the shingles and machine-grooved shakes produced by members of the Bureau are produced in British Columbia, approximately 35% within the State of Washington, and approximately 15% within the State of Oregon. . . .

" . . . During the period January 1, 1954, to June 30, 1960, the Bureau expended in furtherance of its objects and purposes the sum of $1,894,384.00, of which $358,987.00 represented general office and administration expense, $1,106,655.00 represented trade promotion and advertising together with building code, anti-shingle ordinance and insurance differential matters, and $428,742.00 represented inspection expense. The activities of the Bureau fall generally within three categories: (1) grade marking and inspection; (2) trade promotion and advertising; and (3)

building codes, anti-shingle ordinances, and insurance differential matters.

"1. *Grade marking and inspection.* The Bureau maintains a staff of seven inspectors who travel constantly throughout Washington, Oregon and British Columbia inspecting at the mill the manufacture of Certigrade shingles and Certigroove shakes. No charge is made to the members of the Bureau for the inspection service and there is no necessary relationship between the time expended by the inspectors and the size or production capacity of the member mills in that there are differences in mill locations necessitating extended travel in respect to some mills and larger mills oftentimes have less inspection problems than do smaller mills.

"2. *Trade promotion and advertising.* The trade promotional and advertising activities of the Bureau encompass space advertising in national publications, the production and dissemination of numerous and varied pieces of literature and the individual promotional activities of five field men, each assigned a different geographical territory within the United States and who call upon architects, builders, lumber dealers and distributors, and others in related fields. National advertising is directed both to the 'trade', that is architects, builders, retailers and distributors, and to the ultimate consumer.

"Literature extends from a technical manual, the Certigrade handbook, of which almost a million copies have been distributed, to various types of literature directed to specific questions of application and architectural variations, literature directed primarily to the consumer and a newspaper mat service. During a typical year over 200,000 pieces of literature are distributed from the Bureau office by direct mail, through the field men and through the member mills themselves. All literature of the Bureau is available without charge to all members.

"*The Bureau field men are constantly endeavoring to enlarge the market and create a demand for Certigrade shingles and Certigroove shakes*; in addition to contacting builders, architects, dealers and distributors, the field men

lecture at universities, conduct seminars in respect to application, staff convention exhibits, sponsored and maintained by the Bureau at conventions held by builders, architects and dealers, and generally act as trouble shooters in behalf of the Bureau and its membership. The activities of the Bureau field men are solely in behalf of the Bureau, although their services are also available to all the individual members without charge.

"3. *Building codes, anti-shingle ordinances and insurance differential matters.* Throughout the period of the Bureau's existence, the shingle industry has been constantly confronted with anti-shingle legislation and discriminatory insurance differentials. Both from the Seattle office and through its field men, the Bureau has combated anti-shingle ordinances and legislation and has been able to secure approval for wood shingles as applied to roofs, with some limitations, within the three major building codes in use in the United States. If it were not for the efforts of the Bureau, it is believed that there would be an ordinance or law prohibiting the use of red cedar shingles upon any roof in the United States.

"As a part of discriminatory legislation directed against wood shingle roofs, every state in the Union at one time has permitted discriminatory fire insurance differentials ranging from 2% to 60%. At the present time, and largely through the efforts of the Bureau, this fire insurance differential has been eliminated in 23 states as follows: Alaska, Arizona, California, Connecticut, Delaware, Illinois, Maine, Maryland, Massachusetts, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Utah, Vermont, Washington and Wisconsin.

"The Tax Commission has excluded from the tax base amounts received by the Bureau for initiation fees which fee is based on the number of machines used by the manufacturer-member times $100.00." (Italics ours.)

The activities of the Bureau, including the promotion of the trademark "Certigrade" respecting red cedar shingles and the trademark "Certigroove" respecting red cedar

shakes, are financed under an arrangement set out in Article 7 of the By-Laws of the Bureau, entitled "Contributions of Members," providing:

"Each member in consideration of the services rendered and to be rendered by the corporation shall pay to said corporation twelve cents (12¢) for every four-bundle roof square of No. 1 grade shingles, seven cents (7¢) for every four-bundle roof square of second grade shingles, . . ."

The business and occupation tax involved herein was levied by the Tax Commission under the classification, "Service and other activities," embraced within RCW 82.04-.290. Under this classification the amount of the tax is measured by the gross income of the business multiplied by the rate of one per cent.

RCW 82.04.430 provides that taxpayers may deduct from the measure of the business and occupation tax as follows:

" . . .

"(2) Amounts derived from bona fide initiation fees, dues, contributions, donations, tuition fees, and endowment funds. This paragraph shall not be construed to exempt any person, association, or society from tax liability upon selling tangible personal property or upon providing facilities or services for which a special charge is made to members or others. Dues which are for, or graduated upon, the amount of service rendered by the recipient thereof are not permitted as a deduction hereunder; . . ."

██ The theory of the Bureau, urged in the trial court and here on appeal, is that the revenues accruing to it under Article 7 of its By-Laws (quoted above) are dues or contributions under RCW 82.04.430(2), quoted above; and, consequently, that the Bureau is entitled to deduct the amount of such revenues from the measure of the business and occupation tax. This would mean in effect that the Bureau would pay no business and occupation tax respecting its public relations and business promotional activities in behalf of its member-manufacturers of red cedar shingles and shakes. We are convinced that the Bureau's interpretation of the word "dues" and the word "contributions" is a somewhat strained one. We believe the word "dues", given its ordinary everyday meaning *does not connote pay-*

*ments such as those made herein* to "trade associations" for services rendered *such as those involved in the instant case.*

If there is any doubt as to the meaning of the word "dues", and we believe there is none, the position taken by the Bureau is untenable for another reason; namely, RCW 82.04.430(2) specifically provides: "Dues which are for, or graduated upon, the amount of service rendered by the recipient thereof are not permitted as a deduction hereunder; . . . " The payments made by each member of the Bureau are proportionate to the size and volume of that member's business and manufacturing operations. While it is true that the services rendered by the Bureau are general in nature and for the most part cannot be said to be specific services rendered to particular member-manufacturers of red cedar shingles or shakes; nevertheless, the Bureau does unquestionably render most significant services to the industry as a whole. The benefits derived by the individual members are roughly in proportion to their share of the total market; *i.e.*, in proportion to the amount or the extent of the production of each member. Since the payments of each member are based upon that member's production, such payments thus, in terms of the statute, RCW 82.04.430, " . . . are for, or graduated upon, the amount of service rendered . . . " Falling, as we believe they do, clearly within the proviso of RCW 82.04.430(2) negatives consideration of such payments as dues or contributions, donations, tuition fees, and thus negatives consideration of such payments as a permissible deduction by the Bureau as to the measure of business and occupation tax levied by the Tax Commission.

The judgment of the trial court should be reversed, and the position of the Tax Commission in this case should be sustained. It is so ordered.

OTT, C. J., ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., concur.

DONWORTH, J. (dissenting)—I will state as briefly as possible my reasons for disagreeing with the majority opinion.

The agreed statement of facts, describing in detail the nature of respondent's services to its members, includes the following:

"3. *Building codes, anti-shingle ordinances and insurance differential matters.* Throughout the period of the Bureau's existence, the shingle industry has been constantly confronted with anti-shingle legislation and discriminatory insurance differentials. Both from the Seattle office and through its field men, the Bureau has combated anti-shingle ordinances and legislation and has been able to secure approval for wood shingles as applied to roofs, with some limitations, within the three major building codes in use in the United States. If it were not for the efforts of the Bureau, it is believed that there would be an ordinance or law prohibiting the use of red cedar shingles upon any roof in the United States."

RCW 82.04.430(2), quoted in the majority opinion, permits taxpayers to deduct, in computing their tax, "bona fide initiation fees, dues, contributions, donations," and, with respect to dues, contains this limitation:

". . . Dues which are for, or graduated upon, the amount of service rendered by the recipient thereof are not permitted as a deduction hereunder; . . ."

Respondent's bylaws provide, with respect to contributions of its members (dues), as follows:

"Each member in consideration of the services rendered and to be rendered by the corporation shall pay to said corporation twelve cents (12¢) for every four-bundle roof square of No. 1 grade shingles, seven cents (7¢) for every four-bundle roof square of second grade shingles, . . ."

The majority hold that these dues are not deductible in computing respondent's business and occupation tax, saying:

". . . We are convinced that the Bureau's interpretation of the word 'dues' and the word 'contributions' is a somewhat strained one. We believe the word 'dues', given its ordinary everyday meaning *does not connote payments such as those made herein* to 'trade associations' for services rendered *such as those involved in the instant case.*

"If there is any doubt as to the meaning of the word 'dues', and we believe there is none, the position taken by the Bureau

is untenable for another reason; namely, RCW 82.04.430 (2) specifically provides: 'Dues which are for, or graduated upon, the amount of service rendered by the recipient thereof are not permitted as a deduction hereunder; . . .' The payments made by each member of the Bureau are proportionate to the size and volume of that member's business and manufacturing operations. While it is true that the services rendered by the Bureau are general in nature and for the most part cannot be said to be specific services rendered to particular member-manufacturers of red cedar shingles or shakes; nevertheless, the Bureau does unquestionably render most significant services to the industry as a whole. The benefits derived by the individual members are roughly in proportion to their share of the total market; *i.e.*, in proportion to the amount or the extent of the production of each member. Since the payments of each member are based upon that member's production, such payments thus, in terms of the statute, RCW 82.04.430, '. . . are for, or graduated upon, the amount of service rendered . . .' Falling, as we believe they do, clearly within the proviso of RCW 82.04.430 (2) negatives consideration of such payments as dues or contributions, donations, tuition fees, and thus negatives consideration of such payments as a permissible deduction by the Bureau as to the measure of business and occupation tax levied by the Tax Commission."

I cannot agree with either basis upon which the majority hold that dues paid by respondent's members are not deductible under the statute. With respect to the second ground, the majority, in my opinion, are interpreting the statute liberally in favor of the state (instead of the taxpayer) and, in effect, hold that the "benefits" derived by each member is enjoyed in proportion to the volume of his production. This is not what the exclusionary clause relating to dues forbids. The limitation relates solely to sums paid directly by a member for services rendered to him and representing the cost thereof. It has no relation to dues charged for the maintenance and operation of respondent's functions generally in carrying out the purposes for which it was incorporated.

The portion of the agreed statement of facts quoted above to the effect that, if it had not been for the services rendered

by respondent to its members, the use of red cedar shingles upon any roof in the United States would be prohibited by law, can only be construed as meaning that *all* of respondent's members would have been completely put out of business.

It appears to me that, whether a member's operation in the production of red cedar shingles be large or small, the compulsory shutting down of the business permanently would be, in all cases, a catastrophy of considerable magnitude.

The fact that the dues payable to respondent are based on the volume of the member's production of shingles does not, in my opinion, indicate that the member's contribution to the association is based upon the cost or value of particular service rendered to him by respondent. In other words, referring to the statutory exclusion, they are not "for, or graduated upon, the amount of service rendered by the recipient thereof." Indeed, the amount of money constituting each member's dues has *no* relation to the amount of service rendered by respondent to such member. As above stated, the computation of dues payable in each instance is graduated *not* upon the amount of work performed by respondent for the individual member but upon the volume of business done by the member. Thus, the statutory exclusion does not apply.

It seems to me that, accepting as we must, the agreed statement of facts, including the facts stated in paragraph 3 thereof (quoted above), the court should conclude that, except for the services performed by respondent, all of its members would now be, in effect, prohibited by law from producing red cedar shingles. This necessarily follows from the agreed fact that, but for the services of respondent, the use of red cedar shingles on any roof in the United States would have been prohibited by ordinance or statute.

For the reasons stated herein, I am of the opinion that items involved in this case were dues within the meaning of the statute and were deductible by respondent in computing its business and occupation tax.

I would affirm the trial court's judgment.

HILL and WEAVER, JJ., concur with DONWORTH, J.

August 9, 1963. Petition for rehearing denied.