210 P.3d 297 (2009)
HOMESTREET, INC., Homestreet Capital Corporation, and Homestreet Bank, Petitioners,
v.
STATE of Washington, DEPARTMENT OF REVENUE, Respondent.
No. 80544-0.
Supreme Court of Washington, En Banc.
Argued September 16, 2008.
Decided June 18, 2009.
*298 Robert Lee Mahon, III, Scott M. Edwards, Gregg D. Barton, Perkins Coie LLP, Seattle, WA, for Petitioners.
Donald F. Cofer, Attorney General's Office, Olympia, WA, for Respondent.
SANDERS, J.
¶ 1 HomeStreet, Inc., is a residential mortgage lender that services loans it sells or securitizes[1] to secondary lenders. It received tax deductions for the interest retained from these loans under RCW 82.04.4292 until the Department of Revenue (DOR) issued an order requiring HomeStreet, Inc., to pay business and occupation (B & O) taxes. HomeStreet, Inc., paid the taxes but then sued DOR for a refund. The trial court granted DOR's motion for summary judgment of dismissal, which was affirmed by the Court of Appeals. We now reverse the Court of Appeals and order DOR to refund the taxes to HomeStreet, Inc., plus statutory interest and costs.

FACTS AND PROCEDURAL HISTORY
¶ 2 HomeStreet Capital Corporation,[2] HomeStreet Bank,[3] and HomeStreet, Inc.[4] (collectively HomeStreet) are corporations organized and existing under the laws of the State of Washington, each with corporate headquarters in Seattle. HomeStreet Capital Corporation and HomeStreet Bank are *299 wholly owned subsidiaries of HomeStreet, Inc.
¶ 3 HomeStreet originates mortgage loans by lending money to borrowers to purchase residential property. HomeStreet sells or securitizes about 90 percent of these loans on the secondary market to lenders such as the Federal National Mortgage Association (Fannie Mae), the Government National Mortgage Association (Ginnie Mae), the Federal Home Loan Mortgage Corporation (Freddie Mac), the Oregon Housing Authority, and the Federal Home Loan Bank. HomeStreet sells the loans or securitized interests two ways: (1) it sells the whole loan or security in its entirety (servicing released) or (2) it sells a portion of the loan while retaining the right to service the loan or security and receive a portion of the interest (servicing retained). HomeStreet also sells securities backed by mortgages or deeds of trust (mortgage-backed securities) guaranteed by Fannie Mae, Freddie Mac, or Ginnie Mae.
¶ 4 For mortgage-backed securities and loans sold on a service-retained basis, borrowers continue to make principal and interest payments to HomeStreet because HomeStreet still owns a portion of the loan and services the loans for the secondary market lenders. Borrowers usually do not know a secondary market transaction has occurred. HomeStreet collects the payments from the borrowers, pays the investors the principal and a portion of the interest, and retains a portion of the interest as a servicing fee. HomeStreet retains a portion of the interest only if the borrowers make interest payments. The money HomeStreet receives is not a flat fee but varies according to the size and length of the loan, interest rate fluctuations, and whether the borrower prepays or defaults on the loan.
¶ 5 When a loan is sold in its entirety the borrower makes principal and interest payments to the purchaser of the loan, and HomeStreet no longer receives any compensation for these loans from the borrower or the purchaser. This case does not involve service-released loans, and this is where the confusion arises for the dissent. The dissent conflates loans sold on a service-retained basis with loans sold on a service-released basis. HomeStreet does not maintain any connection with loans sold on a service-released basis. Unfortunately the dissent fails to distinguish between these two very different ways in which HomeStreet sells loans on the secondary market. The dissent, in fact, fails to even mention this important difference. The dissent simply says HomeStreet "assigns" and sells the loans to third parties. Dissent at 305. In essence the dissent simplifies and misstates the facts.
¶ 6 The State imposes B & O tax on the privilege to do business in Washington. RCW 82.04.220. One statutory deduction is found in RCW 82.04.4292; however HomeStreet and DOR dispute the meaning of "amounts derived from interest." RCW 82.04.4292 provides,
In computing tax there may be deducted from the measure of tax by those engaged in banking, loan, security or other financial businesses, amounts derived from interest received on investments or loans primarily secured by first mortgages or trust deeds on nontransient residential properties
(Emphasis added.) RCW 82.04.4292 contains five elements:
1. The person is engaged in banking, loan, security, or other financial business;
2. The amount deducted was derived from interest received;
3. The amount deducted was received because of a loan or investment;
4. The loan or investment is primarily secured by a first mortgage or deed of trust; and
5. The first mortgage or deed of trust is on nontransient residential real property.
Clerk's Papers (CP) at 99. All five elements of the statute must be met for the taxpayer to receive a deduction. The second element is the only element in dispute herein.
¶ 7 In 1992 Continental, Inc., HomeStreet's predecessor, brought a petition seeking correction of a tax assessment and a refund of the taxes it paid to DOR. DOR *300 issued Determination No. 92-403,[5] stating the five requirements of RCW 82.04.4292 were met and Continental should have received a deduction for the interest. DOR issued other determinations, including Determination No. 92-392,[6] which held that other financial institutions qualified for deductions on their retained interest. However in 1999 DOR issued Determination No. 98-218, which overruled Determination No. 92-392 "to the extent it states the portion of the interest income stream retained by the seller of a qualifying mortgage continues to be deductible under RCW 82.04.4292 despite the seller's lack of risk of interest rate fluctuation," changing its position on the deductions allowed under RCW 82.04.4292. CP at 112. HomeStreet was then audited by DOR and ordered to pay $20,224.72 in B & O tax on interest retained from 1997 through 2001 on mortgages it sold on a service-retained basis and mortgage-backed securities. HomeStreet paid DOR, and both parties entered into an agreement allowing HomeStreet to dispute the retained interest at a later date.
¶ 8 HomeStreet sued DOR for a refund of the B & O tax it paid. In January 2006 the trial court granted DOR summary judgment of dismissal, opining DOR's interpretation of the statute was more consistent with the legislature's intent because the statutory deduction was intended to be limited.
¶ 9 The Court of Appeals affirmed the trial court, holding the income was "derived from interest" in its broadest sense but due only to the "contractual relationship with the purchaser of the loan for servicing the loans and that it is merely allowed to pay itself by `retaining' part of the contract purchaser's interest payment in return." HomeStreet, Inc. v. Dep't of Revenue, 139 Wash.App. 827, 843, 162 P.3d 458, 460 (2007). It also held HomeStreet's interpretation of the statute was "overbroad, unreasonable, and ignores the requirement that we construe tax deduction statutes narrowly." Id. at 844, 162 P.3d 458. We granted review. 163 Wash.2d 1022, 185 P.3d 1194 (2008).

STANDARD OF REVIEW
¶ 10 Statutory interpretation is a question of law reviewed de novo. City of Seattle v. Burlington N. R.R., 145 Wash.2d 661, 665, 41 P.3d 1169 (2002). The primary objective of any statutory construction inquiry is "to ascertain and carry out the intent of the Legislature." Rozner v. City of Bellevue, 116 Wash.2d 342, 347, 804 P.2d 24 (1991).

ANALYSIS
¶ 11 We are asked to determine what "amounts derived from interest" means in RCW 82.04.4292 and whether HomeStreet qualifies for a deduction under the statute. We hold that HomeStreet is entitled to a tax deduction under RCW 82.04.4292 because the amounts it receives are derived from interest.
¶ 12 When interpreting a statute, we first look to its plain language. State v. Armendariz, 160 Wash.2d 106, 110, 156 P.3d 201 (2007). If the plain language is subject to only one interpretation, our inquiry ends because plain language does not require construction. Id.; State v. Thornton, 119 Wash.2d 578, 580, 835 P.2d 216 (1992). "Where statutory language is plain and unambiguous, a statute's meaning must be derived from the wording of the statute itself." Wash. State Human Rights Comm'n v. Cheney Sch. Dist. No. 30, 97 Wash.2d 118, 121, 641 P.2d 163 (1982). Absent ambiguity or a statutory definition, we give the words in a statute their common and ordinary meaning. Garrison v. Wash. State Nursing Bd., 87 Wash.2d 195, 196, 550 P.2d 7 (1976). To determine the plain meaning of an undefined term, we may look to the dictionary. Id. "Where statutory language is plain and unambiguous, *301 courts will not construe the statute but will glean the legislative intent from the words of the statute itself, regardless of contrary interpretation by an administrative agency." Agrilink Foods, Inc. v. Dep't of Revenue, 153 Wash.2d 392, 396, 103 P.3d 1226 (2005). "A statute that is clear on its face is not subject to judicial construction." State v. J.M., 144 Wash.2d 472, 480, 28 P.3d 720 (2001).
¶ 13 If the statute remains subject to multiple interpretations after analyzing the plain language, it is ambiguous. Burton v. Lehman, 153 Wash.2d 416, 423, 103 P.3d 1230 (2005). A statute is ambiguous if "susceptible to two or more reasonable interpretations," but "a statute is not ambiguous merely because different interpretations are conceivable." State v. Hahn, 83 Wash.App. 825, 831, 924 P.2d 392 (1996).
¶ 14 "[E]ach word of a statute is to be accorded meaning." State ex rel. Schillberg v. Barnett, 79 Wash.2d 578, 584, 488 P.2d 255 (1971). Whenever possible, statutes are to be construed so "`no clause, sentence or word shall be superfluous, void, or insignificant.'" Kasper v. City of Edmonds, 69 Wash.2d 799, 804, 420 P.2d 346 (1966) (quoting Groves v. Meyers, 35 Wash.2d 403, 407, 213 P.2d 483 (1950)). A court "is required to assume the Legislature meant exactly what it said and apply the statute as written." Duke v. Boyd, 133 Wash.2d 80, 87, 942 P.2d 351 (1997). The dissent would have us believe that words in fact do not mean what they say. Dissent at 303-04. However we believe the better practice is to look at the words in the statute at issue to determine what the statute means.[7]
¶ 15 The term "interest" is not defined in RCW 82.04.4292 or in any tax statute in chapter 82.04 RCW but has been defined in several cases. "Interest is merely a charge for the use or forbearance of money." Security Sav. Soc'y v. Spokane County, 111 Wash. 35, 37, 189 P. 260 (1920). "[F]or an amount to constitute interest, it must be paid or received on an existing, valid, and enforceable obligation." Thompson v. Comm'r, 73 T.C. 878, 1980 WL 4596 (1980) (citing Meilink v. Unemployment Reserves Comm'n, 314 U.S. 564, 570, 62 S.Ct. 389, 86 L.Ed. 458 (1942)).
¶ 16 "Interest" is defined as "[t]he compensation fixed by agreement or allowed by law for the use or detention of money, or for the loss of money by one who is entitled to its use; esp., the amount owed to a lender in return for the use of borrowed money." BLACK'S LAW DICTIONARY 829 at para. 3. (8th ed.1999). "Interest" is also defined as "the price paid for borrowing money generally expressed as a percentage of the amount borrowed paid in one year." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1178 (2002).
¶ 17 The revenue at issue here is interest. It is the charge or price borrowers pay HomeStreet for borrowing money from HomeStreet. It is the amount owed to HomeStreet in return for the use of the borrowed money. The amount the borrowers pay to HomeStreet is on existing, valid, and enforceable contracts. The amount of money HomeStreet receives is not set but rather changes with the size and length of the loans, interest rate fluctuations, and the borrowers' ability to pay back the loan.
¶ 18 DOR argues HomeStreet is paid for the services it provides to the secondary lenders and not for the borrowers' use of the money. DOR asserts the revenue HomeStreet receives is a servicing fee even though it comes from the interest payments. This is incorrect. Although the loans have been partially sold to secondary market lenders, the borrowers still borrowed the money from HomeStreet and HomeStreet still collects the payments, including the interest.
¶ 19 "Derived from" is not defined in the B & O tax statutes either. "Derived" is defined as "to take or receive esp. from a source." WEBSTER'S, supra, at 608. The *302 Court of Appeals states the revenue at issue "is, in the broadest sense, `derived from interest' because HomeStreet deducts it directly from the interest stream the loans generate." HomeStreet, 139 Wash.App. at 843, 162 P.3d 458. The State's expert witness, Earl Baldwin, said the income is "`derivative' of mortgage interest because the fee is deducted from the interest portion of the loan as provided by the agency-seller contract." CP at 748.
¶ 20 The revenue at issue here is received from a source, and the source is interest. The revenue is therefore "derived from interest" because it is taken from the interest the borrowers pay on their loans. When DOR argues the revenue is taken from the interest by HomeStreet as a servicing fee, it goes too far. Under the statute it is not essential to determine why the money is received or taken from a source. See RCW 82.04.4292. The statute requires that the amount only be "derived from interest." RCW 82.04.4292 (emphasis added). The statute does not say the amount must not be used for a servicing fee either. The plain meaning of the statute allows deductions for amounts received from interest, and HomeStreet qualifies for this deduction because it receives interest from the loans.
¶ 21 Since the statute is unambiguous and subject only to one interpretation, it is unnecessary to look any further. DOR argues the legislature intended the statute to apply only to interest while asserting the words "derived from" are unnecessary and meaningless. Verbatim Report of Proceedings (VRP) at 27-28. DOR also argues "amounts derived from interest" means only interest-income based on other cases that interpret other statutes with similar wording. Id. at 32-33. But DOR fails to acknowledge that the legislature's purpose in enacting RCW 82.04.4292 "`was to stimulate the residential housing market by making residential loans available to home buyers at lower cost through the vehicle of a B & O tax [deduction] on interest income received by home mortgage lenders.'" Dep't of Revenue v. Sec. Pac. Bank of Wash., 109 Wash.App. 795, 804, 38 P.3d 354 (2002) (alteration in original) (quoting CP at 33).
¶ 22 Moreover, "amounts derived from" is not meaningless or surplusage, as all words in a statute must be accorded their meaning. DOR cannot simply delete these three words from the statute to suit the meaning it wishes it to convey, nor should the dissent. See dissent at 307. This leads to an incorrect and gross misapplication of the statute as written. The legislature wrote the statute as it did, and we have no power to change it "even if we believe the legislature intended something else but failed to express it adequately." Vita Food Prods., Inc. v. State, 91 Wash.2d 132, 134, 587 P.2d 535 (1978). If the legislature meant only interest then it would not have included the words "amounts derived from."
¶ 23 Tax exemptions and deductions must be narrowly construed. Dep't of Revenue v. Schaake Packing Co., 100 Wash.2d 79, 83-84, 666 P.2d 367 (1983). Taxation is generally the rule and deductions or exemptions are the exceptions. Budget Rent-A-Car of Wash.-Or. v. Dep't of Revenue, 81 Wash.2d 171, 174, 500 P.2d 764 (1972) (citing Fibreboard Paper Prods. Corp. v. State, 66 Wash.2d 87, 401 P.2d 623 (1965)). The burden is on the party asserting the deduction to show it qualifies for a tax deduction. Group Health Coop. of Puget Sound, Inc. v. Wash. State Tax Comm'n, 72 Wash.2d 422, 433 P.2d 201 (1968).
¶ 24 DOR argues HomeStreet does not qualify for a deduction under RCW 82.04.4292 because tax statutes are to be narrowly construed, so the statute only applies to interest income received by the owners of first mortgage loans. However DOR, attempting to narrowly construe the statute, improperly deletes words from the statute. HomeStreet has met its burden to show it qualifies for a tax deduction because the revenue HomeStreet receives is clearly derived from interest.

CONCLUSION
¶ 25 Under the plain meaning of RCW 82.04.4292 tax deductions are allowed for "amounts derived from interest," and the amount HomeStreet retained when servicing the loans is derived from the interest of the *303 loans. We reverse the Court of Appeals and order DOR to refund the taxes at issue, plus statutory interest and costs.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, OWENS, J. JOHNSON and STEPHENS, JJ.
MADSEN, J. (dissenting).
¶ 26 The court must decide the meaning of the words "derived from interest" in RCW 82.04.4292. Unfortunately, the majority determines the meaning of these words without regard to the context in which they are used and the related statutes that give them meaning. The majority thus disregards the numerous cases in which this court has explained how to determine the plain meaning of a statutory term. In addition, the majority says that it is not essential to determine why the money is received, but it is not only essential, it is the first step in applying this taxing scheme. Moreover, the majority fails to apply the principle that deduction and exemption tax statutes are to be narrowly construed. To top it all off, the majority also misstates the facts.
¶ 27 When the proper analysis is applied, it is apparent that the deduction in RCW 82.04.4292 applies only to income that is received by the taxpayer as interest income. It does not apply to fees received by HomeStreet, Inc., in exchange for servicing mortgages that have been transferred to third parties. Accordingly, HomeStreet is not entitled to the deduction.

Analysis
¶ 28 The goal when determining the meaning of statutory language is to understand what the legislature intended and then carry out that intent. Densley v. Dep't of Retirement Sys., 162 Wash.2d 210, 231, 173 P.3d 885 (2007). The starting point is the plain language and ordinary meaning of the language used, because if the meaning of the language is plain, then it must be given effect as an expression of the legislature's intent. Id.
¶ 29 But this does not mean that the language is examined in a vacuum. Rather, as part of the inquiry into whether there is a plain language meaning to be ascertained, the statutory context in which the particular language appears must be considered, as well as related statutes. The majority fails to engage in this analysis, instead applying a "plain meaning" approach that this court explicitly abandoned in favor of an approach that better reflects legislative intent.
¶ 30 In Department of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 43 P.3d 4 (2002), we recognized that there were two existing lines of cases from this court that described the "plain meaning rule" in quite different ways. Under the first line of cases, a court would endeavor to determine plain meaning solely from the wording of the statute itself. Id. at 10, 43 P.3d 4. If the language was found to be unclear or ambiguous, then, as a part of the inquiry into legislative intent and to resolve the ambiguity, the court would consider the statutory scheme as a whole and related statutes. Id.
¶ 31 However, in another long line of cases, this court said that to determine plain meaning a court should examine the statute in which the language in question appears "as well as related statutes or other provisions of the same act in which the provision is found." Id. "Under this second approach, the plain meaning is still derived from what the Legislature has said in its enactments, but that meaning is discerned from all that the Legislature has said in the statute and related states which disclose legislative intent about the provision in question." Id. at 11, 43 P.3d 4 (emphasis added). "[I]f, after this inquiry, the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." Id. at 12, 43 P.3d 4. We deliberately chose the second line of cases as representing "the better approach because it is more likely to carry out legislative intent." Id.
¶ 32 We have reiterated this test of plain meaning in numerous cases. E.g., Densley, 162 Wash.2d at 231 ¶ 47, 173 P.3d 885; Cornhusker Cas. Ins. Co. v. Kachman, 165 Wash.2d 404, 409, 198 P.3d 505 (2008); Tesoro Ref. & Mktg. Co. v. State, Dep't of Revenue, 164 Wash.2d 310, 319 ¶ 12, 190 P.3d 28 *304 (2008) (plurality); Christensen v. Ellsworth, 162 Wash.2d 365, 373 ¶ 12, 173 P.3d 228 (2007); City of Olympia v. Drebick, 156 Wash.2d 289, 295 ¶ 6, 126 P.3d 802 (2006); Advanced Silicon Materials, LLC v. Grant County, 156 Wash.2d 84, 89 ¶ 10, 124 P.3d 294 (2005); Sheehan v. Cent. Puget Sound Reg'l Transit Auth., 155 Wash.2d 790, 797 ¶ 15, 802 ¶ 24, 123 P.3d 88 (2005); State v. Jacobs, 154 Wash.2d 596, 600 ¶ 7, 115 P.3d 281 (2005); Dep't of Labor & Indus. v. Gongyin, 154 Wash.2d 38, 45 ¶ 9, 109 P.3d 816 (2005); State ex rel. Citizens Against Tolls v. Murphy, 151 Wash.2d 226, 242, 88 P.3d 375 (2004); State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003); City of Seattle v. Allison, 148 Wash.2d 75, 81, 59 P.3d 85 (2002); see also, e.g., State v. Krall, 125 Wash.2d 146, 148, 881 P.2d 1040 (1994) (the meaning of words in a statute is determined from "`all the terms and provisions of the act in relation to the subject of the legislation, the nature of the act, the general object to be accomplished and consequences that would result from construing the particular statute in one way or another'" (quoting State v. Huntzinger, 92 Wash.2d 128, 133, 594 P.2d 917 (1979))); Burns v. City of Seattle, 161 Wash.2d 129, 146, 164 P.3d 475 (2007).
¶ 33 Nevertheless, the majority declines to follow our precedent and instead reverts to the formulation of the plain meaning rule that we deliberately discarded on the ground that it is not the best method for determining and applying legislative intent. I believe we should adhere to our precedent. When we are faced with a complex statutory scheme, as we are here, it is imperative that we use the best tools at our disposal.
¶ 34 When RCW 82.04.4292 is examined in the context of the entire statutory scheme and related statutes, its meaning is apparent. The statute is not ambiguous, but its plain meaning is not what the majority says.
¶ 35 We begin with the broad rule under RCW 82.04.290(2) that financial businesses must pay a business and occupation tax (B & O tax) on the "gross income of the business" at a rate of 1.5 percent. RCW 82.04.4292, the statute at issue, then provides for a deduction from income for purposes of B & O tax. It provides in relevant part that "amounts derived from interest received on investments or loans primarily secured by first mortgages" may be "deducted from the measure of tax" by taxpayers in financial businesses. RCW 82.04.4292. The "measure of tax" referred to in RCW 82.04.4292 is thus the "gross income of the business." The "gross income of the business" is a statutorily defined term, and in the definition of the term the legislature identified and distinguished many types of income that a financial business might obtain. The "gross income of the business" means:
The value proceeding or accruing by reason of the transaction of the business engaged in and includes gross proceeds of sales, compensation for the rendition of services, gains realized from trading in stocks, bonds, or other evidence of indebtedness, interest, discount, rents, royalties, fees, commissions, dividends, and other emoluments however designated.
RCW 82.04.080 (emphasis added).
¶ 36 Thus, under the B & O tax scheme pertaining to financial businesses, "compensation for rendition of services," "fees" and "interest" are all defined types of potential gross income of a financial business, and each is distinguishable from the others. By defining what constitutes the gross income of a financial business, which includes all of these forms of income, and then providing in RCW 82.04.4292 that "amounts derived from interest" may be deducted from the measure of tax, the legislature set up a general rule of taxable income and a deduction from taxable income in the case of "amounts derived from interest."
¶ 37 The definition of "gross income of the business" provides other information that is important to understanding the deduction in RCW 82.04.4292. It begins with (1) "[t]he value proceeding or accruing" (2) "by reason of the transaction of the business engaged." The first of these phrases is also a defined term, and it is a critical definition for understanding the taxing scheme. RCW 82.04.090 states that "`[v]alue proceeding or accruing' means the consideration, whether money, credit, rights, or other property expressed in terms of money, actually received or accrued." Among other things, this means *305 that the types of gross income listed in RCW 82.04.080 are identified by the character of the consideration as it is received by or accrued to the taxpayer.[1] The types of income are not identified by the character of the consideration as it is paid by the other party (or parties) to the business transaction. Rather, the character of the income is determined by how it is received by the taxpayer. This concept is elementary; we look to the income in the hands of the taxpayer to determine its character and whether it is subject to taxation.
¶ 38 The majority is thus absolutely incorrect when it states that "it is not essential to determine why the money is received." Majority at 302. Notably, the majority's error occurs because it fails to consider all the statutes that are relevant to the meaning of RCW 82.04.4292.
¶ 39 The second phrase means that the consideration that is subject to tax is received by the taxpayer (or accrues to the taxpayer) by reason of the business transaction in which the taxpayer engaged.
¶ 40 With these statutes in mind, it is obvious that the deduction in RCW 82.04.4292 does not apply to the amounts that HomeStreet claims are "amounts derived from interest." HomeStreet originates first mortgage loans but then assigns them to third parties. Pursuant to contracts entered into with the third party mortgage assignees, HomeStreet keeps the rights to service the mortgages. Servicing the mortgages involves a number of responsibilities, including the responsibility to collect amounts due from the borrowers and remit them to the mortgage assignees. The contracts between HomeStreet and the third party mortgage assignees provide that, in exchange for these services, HomeStreet is paid for these services (servicing the mortgages) from the amount of interest paid and generally calculated as a percentage of the outstanding principle balance.
¶ 41 The amounts in dispute are thus servicing fees paid to HomeStreet. The majority asserts, however, that it is incorrect to say that the revenue that HomeStreet receives consists of servicing fees, because the borrowers still borrowed the money from HomeStreet and HomeStreet still collects the payments, including interest. Majority at 301. This is a misstatement of what occurs. The loans themselves have been sold to third parties, with HomeStreet having the contractual right to service the mortgages, a service for which it is paid. HomeStreet collects the payments because that is one of its obligations in servicing the mortgages. It does not collect them as the lender. It remits the payments to the third party mortgage assignees, after retaining the contractual fees that it is due for servicing the mortgages.[2]
¶ 42 HomeStreet contends that its servicing fees are deductible under RCW 82.04.4292 as "amounts derived from interest." But these servicing fees are not received by HomeStreet as "amounts derived from interest," as explained below.
¶ 43 A deduction from the income that is otherwise subject to B & O tax requires that *306 the income first be identified. Since the business in which HomeStreet is engaged is financial business, RCW 82.04.080 is the statute that defines gross income. As explained, this statute distinguishes between consideration received in the form of compensation for rendition of services, interest, and fees. The legislature plainly intended that "compensation for rendition of services" and "fees" are different forms of gross income from "interest" and must be analyzed separately. In addition, under this statute and RCW 82.04.090, the character of the income is determined as it is received by (or accrues to) the taxpayer and the income is received by (or accrues to) the taxpayer by reason of the business transaction.
¶ 44 Under these statutes, the income that would be taxed absent the deduction, if it were to apply, consists of the fees that HomeStreet is paid for servicing the mortgages it has assigned to third parties. That is, the income to HomeStreet as it is received (or accrued) consists of fees paid to it for mortgage servicing. HomeStreet does not receive interest income from the payments made by the borrowers. In addition, the business transaction from which HomeStreet obtains the amounts in dispute is the contract between HomeStreet and the third party  it is not the lending of money to the borrower. Thus, the particular "gross income from business" at issue here consists of the fees paid to HomeStreet for its servicing the mortgages.
¶ 45 The deduction in RCW 82.04.4292 is for "amounts derived from interest received on investments or loans primarily secured by first mortgages or trust deeds on nontransient residential properties." The legislature's differentiation between types of income that constitutes "gross income" shows that if it meant the deduction in RCW 82.04.4292 to apply to other types of gross income than interest, it would have explicitly said so.
¶ 46 This conclusion is reinforced by other statutes authorizing deductions from B & O taxation. For example, RCW 82.04.4282 allows a deduction for "[a]mounts derived from bona fide (1) initiation fees, (2) dues, (3) contributions, (4) donations, (5) tuition fees, (6) charges made ... for operation of privately owned kindergartens, and (8) endowment funds." This is a detailed, precise list of income that may be deducted from income for B & O tax purposes. The legislature clearly listed the specific items that may be deducted, that is, the deduction is in the amount of money from these specific types of income when received by the business.
¶ 47 And in fact, this is what this court held when it was faced with this particular statute[3] and a claim involving payments made to the Red Cedar Shingle Bureau, a nonprofit corporation in the business of promoting trade and in particular working to prevent antishingle legislation and discriminatory insurance differentials. Red Cedar Shingle Bureau v. State, 62 Wash.2d 341, 382 P.2d 503 (1963). Under its bylaws, members were charged "`in consideration of the services rendered and to be rendered by the corporation'" an amount based on the number and type of shingles they manufactured. Id. at 346, 382 P.2d 503. The court rejected the corporation's claim that it was entitled to deduct these amounts paid as "dues" or "contributions," stating that "'dues,' given its ordinary everyday meaning does not connote payments" like those at issue made "to `trade associations'" for the kind of services rendered.[4]Id. at 346-47, 382 P.2d 503 (emphasis omitted).
¶ 48 By comparison to RCW 82.04.4286 (and analogy to Red Cedar Shingle Bureau), it is apparent that by listing only "interest" as the source of income that may be deducted, the legislature meant in RCW 82.04.4292 to limit the deduction to income received as "interest."
¶ 49 Other statutes also reinforce this conclusion and help explain the legislature's use of the words "amounts derived from" in *307 RCW 82.04.4292 because, unlike a deduction from income based on its character as income (as in this case), they provide for nontaxability based on the character of amounts paid from income. For example, RCW 82.04.285 requires B & O taxes on gross income from operating games of chance, but subsection (4) states that "`[g]ross income of the business' does not include the monetary value or actual cost of any prizes that are awarded, amounts paid to players for winning wagers," and so forth. Thus, nontaxability depends on what is paid for.
¶ 50 The distinction is that nontaxability based on what the taxpayer is paying money for is different from nontaxability based on the kind of income received. By using the words "amounts derived from" in connection with interest, the legislature indicated that the deduction it intended is for interest income and not for amounts paid by the taxpayer as interest. Therefore, the words "amounts derived from" are not superfluous  they have meaning  but they do not have the meaning argued for by HomeStreet.
¶ 51 The words "amounts derived from" do not mean the income that may be deducted is of any type at all when received, so long as it was paid somewhere along the line as interest. And any such conclusion is counter to the provisions in RCW 82.04.080 (defining gross income) and RCW 82.04.090 (defining "value proceeding or accruing").
¶ 52 Finally, in interpreting RCW 82.04.4292, the majority fails to apply the principle that courts should narrowly construe statutes setting out deductions and exemptions. O'Leary v. Dep't of Revenue, 105 Wash.2d 679, 682, 717 P.2d 273 (1986); Evergreen-Washelli Mem'l Park Co. v. Dep't of Revenue, 89 Wash.2d 660, 663, 574 P.2d 735 (1978). At a very minimum, the related statutes in chapter 82.04 RCW render the majority's reading of the statute highly questionable. This, at a minimum, should trigger the court's obligation to narrowly construe the statute and hold that it applies by its terms only to interest.
¶ 53 When RCW 82.04.4292 is read in the context of the B & O taxing scheme as a whole, and in light of related statutes, its plain meaning is that the servicing fees that HomeStreet received for servicing the assigned mortgages are not deductible under the statute. It is also apparent that the statute applies only to interest income received on "investments or loans primarily secured by first mortgages or trust deeds on nontransient residential properties." RCW 82.04.4292.

Conclusion
¶ 54 The majority fails to follow settled precedent for determining whether statutory language has a discernable plain meaning. When our precedent is followed, it is clear that RCW 82.04.4292 has a plain meaning, but it is not the meaning accorded the statute by the majority. Rather, the statute pertains only to interest and, more particularly for purposes of this case, it clearly does not apply to fees that are received for servicing mortgages conveyed to third parties.
¶ 55 The fact that the source of the fees is or may have been interest when paid by the borrower is irrelevant, because characterizing income, and therefore deductions of amounts derived from income, for B & O taxing purposes depends on its nature when received by the taxpayer. Here, the amounts were received by HomeStreet in the form of fees under the contracts between HomeStreet and the third party mortgage assignees.
¶ 56 I dissent.
WE CONCUR: CHAMBERS, J., result only.
NOTES
[1] Securitizing is the process of issuing mortgage-backed or mortgage-related securities. HomeStreet, Inc. v. Dep't of Revenue, 139 Wash.App. 827, 831, 162 P.3d 458 (2007).
[2] Formerly Continental Mortgage Company, Inc.
[3] Formerly Continental Savings Bank.
[4] Formerly Continental, Inc.
[5] Determination No. 92-403 states, "[t]he payments of the retained interest at issue arises out of a relationship between the borrower and the taxpayers which is completely independent of the investors' purchase of a security representing another portion of the loan. We conclude that the amounts in question constitute interest within the meaning of RCW 82.04.4292." CP at 153.
[6] In Determination No. 92-392, the taxpayer originated, pooled, and sold the loans on the secondary market backed "under federal mortgage-backed guarantee programs." CP at 59.
[7] The dissent engages in a lengthy analysis of other statutes in chapter 82.04 RCW but fails to actually analyze the statute at issue here. The dissent states, "[w]ith these statutes [(RCW 82.04.290(2), RCW 82.04.080)] in mind, it is obvious that the deduction in RCW 82.04.4292 does not apply to the amounts that HomeStreet claims are `amounts derived from interest.'" Dissent at 305.
[1] Taxpayers generally employ either a cash or accrual basis of accounting, and RCW 82.04.090 provides that the term "value proceeding or accruing" is to apply, "in each case, on a cash receipts or accrual basis according to which" of these methods of accounting is used.
[2] The majority is also mistaken about which transactions are addressed in this dissent. Majority at 299. The service-released loans are irrelevant for present purposes. Instead, the loans at issue are those that have been assigned to third parties, with HomeStreet retaining, by contract with those third parties, a portion of the amount the borrower pays as a fee for the services that HomeStreet provides to that third party assignee. As the Court of Appeals correctly put it:

When HomeStreet or any mortgage lender originates a mortgage loan, it creates a relationship between itself and the borrower by allowing the borrower to use its money in return for interest on its capital. This relationship falls squarely within the statutory tax deduction. But when HomeStreet sells the loan on the secondary market, it recovers the capital it invested and the borrower is no longer paying HomeStreet for using its money. And, in servicing retained sales, HomeStreet retains only the right to provide loan servicing for the purchaser of the loan and to be compensated for those services.
HomeStreet, Inc. v. Dep't of Revenue, 139 Wash. App. 827, 843, 162 P.3d 458 (2007) (emphasis added). It is the compensation for those services that is actually at issue here.
[3] The statute was codified at former RCW 82.04.430(2) (1979), repealed by Laws of 1980, ch. 37, § 81.
[4] The court added that if there was any doubt about this conclusion, "and we believe there is none" the Board's argument was untenable "for another reason"  a proviso in the statute. Red Cedar Shingle Bureau, 62 Wash.2d at 346-47, 382 P.2d 503.