FILED
COURT OF APPEALS
DIVISION II

2013 MAR -5 AM 9: 23

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CRYSTAL MOUNTAIN, INC.,<br><br>                Appellant,<br><br>v.<br><br>STATE OF WASHINGTON, DEPARTMENT<br>OF REVENUE,<br><br>                Respondent. | No. 42081-3-II<br><br><br><br>PUBLISHED OPINION |

WORSWICK, C.J. — Crystal Mountain, Inc. appeals a judgment denying a full refund of its payment of the leasehold excise tax. Crystal Mountain argues that it does not have a taxable "leasehold interest" as the applicable statute defines that term. We affirm.

## FACTS

Crystal Mountain, Inc. operates a ski resort located on federal land in the Mt. Baker-Snoqualmie National Forest. Crystal Mountain runs the resort as a business for profit; it charges guests fees for the use of services and equipment, and it operates retail stores and restaurants.

The U.S. Forest Service has granted Crystal Mountain a special use permit covering 4,350 acres, of which 2,600 acres are skiable terrain. Crystal Mountain pays the Forest Service an annual permit fee based on its gross revenues.

The current permit was revised and reissued in 2001 and will expire in 2032. The Forest Service may revoke the permit for noncompliance with its terms or applicable laws, and for

compelling reasons in the public interest. Upon termination of the permit, Crystal Mountain must remove its facilities.

The permit authorizes Crystal Mountain to "use [the land] for the purposes of constructing, operating, and maintaining [a] winter sports resort including food service, retail sales, and other ancillary facilities." Ex. 4 at 1. The permit's terms and conditions require that Crystal Mountain's "use shall normally be exercised at least 365 days each year." Ex. 4 at 3. The permit does not state whether it authorizes Crystal Mountain to "possess" or "occupy" the land. In reference to a renewal of the permit on its expiration, the permit states that "a new special-use authorization to occupy and use the . . . land may be granted." Ex. 4 at 2.

Crystal Mountain does not have an exclusive right to use the land. The permit states in part:

> E.    Nonexclusive Use. This permit is not exclusive. The Forest Service reserves the right to use or permit others to use any part of the permitted area for any purpose, provided such use does not materially interfere with the rights and privileges hereby authorized.
> F.    Area Access. Except for any restrictions as the holder and the [Forest Service] may agree to be necessary to protect the installation and operation of authorized structures and developments, the lands and waters covered by this permit shall remain open to the public for all lawful purposes.

Ex. 4 at 2. Further, the permit allows members of the public to access the area without using Crystal Mountain's ski lifts or other facilities.

The permit authorizes Crystal Mountain, with the Forest Service's advance approval, to construct facilities necessary for operating the ski resort. Crystal Mountain has constructed and maintains capital improvements, including nine ski lifts, three lodges, four ski patrol duty stations, a maintenance shop complex, and an employee housing complex. Crystal Mountain also maintains the roads and provides emergency services and avalanche control.

2

Crystal Mountain has authority over its own facilities, but not as much authority as it would have if it owned the land. The permit requires Crystal Mountain to identify its upcoming operations and services in an annual operating plan submitted to the Forest Service for its review and approval. Crystal Mountain also operates the ski resort subject to the constraints of a master development plan and accompanying environmental impact statement, an agreement with the Muckleshoot Indian Tribe, and a consent decree that prohibits new development until a wastewater treatment plant serves the area.

The Forest Service closely monitors Crystal Mountain's activities on the land, sets standards for safety and sanitation, and requires Crystal Mountain to maintain improvements and natural features. The Forest Service does not have any direct operations or offices on the land.

Crystal Mountain pays property tax to Pierce County on the value of the buildings and improvements it owns or has constructed in the permit area. However, property belonging to federal, state, or local governments is exempt from the real property tax. WASH. CONST. art. VII, § 1; RCW 84.36.010.

In lieu of the real property tax, RCW 82.29A.030 imposes a leasehold excise tax on leasehold interests in publicly owned land. Crystal Mountain reported and paid the leasehold excise tax each year between 2002 and 2006.[1]

In 2007, Crystal Mountain requested that the Department of Revenue fully refund the amounts it paid as leasehold excise taxes for the years 2002 through 2006. The Department's

---

[1] The leasehold excise tax is assessed as 12.84 percent of the value of the "taxable rent" paid for the leasehold interest. Clerk's Papers at 184; see RCW 82.29A.030(1)(a), (2). Crystal Mountain paid leasehold excise taxes of $37,179 in 2002; $43,521 in 2003; $43,987 in 2004; $43,009 in 2005; and $30,147 in 2006.

Miscellaneous Tax Section denied this request, and an administrative law judge in the Department's Appeals Division affirmed this decision on administrative appeal. The administrative law judge found that the leasehold excise tax applied to Crystal Mountain, even though the permit did not give Crystal Mountain an exclusive right to use the land.

Crystal Mountain filed a complaint in superior court, seeking a full refund and arguing that the tax does not apply. After a bench trial, the trial court rejected this argument. The trial court ruled that the permit grants Crystal Mountain possession of the land, even though its possession is not exclusive. Crystal Mountain appeals.

ANALYSIS

A.    *Challenged Finding of Fact*

Crystal Mountain assigns error to the trial court's finding that "[t]he Permit does not give Crystal Mountain exclusive possession of the 4,350 acre Permit area." Clerk's Papers at 174. Crystal Mountain challenges this finding's *implication* that the permit creates any possessory interest. We review a challenged finding of fact for substantial evidence: evidence sufficient to persuade a fair-minded person of the finding's truth or correctness. *Hegwine v. Longview Fibre Co., Inc.*, 162 Wn.2d 340, 352-53, 172 P.3d 688 (2007).

Substantial evidence exists for this finding. The permit gives Crystal Mountain some rights, including the right to use the permit area. As part of its use, Crystal Mountain has constructed capital improvements, such as buildings and ski lifts, which are constantly present in the permit area. But the permit explicitly states that Crystal Mountain cannot exclude the general public from the permit area. Further, the general public may access the permit area without using Crystal Mountain's ski lifts or facilities. Accordingly, substantial evidence supports the

4

No. 42081-3-II

factual finding that Crystal Mountain does not have exclusive possession of the permit area. Whether the permit gives Crystal Mountain a possessory interest is a question of law.

The remaining findings of fact are unchallenged. Unchallenged findings of fact are verities on appeal. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).

B.     *Statutory Interpretation*

Crystal Mountain argues that the permit does not create a taxable "leasehold interest" under RCW 82.29A.020 because the permit does not grant Crystal Mountain a right of possession. Crystal Mountain urges us to adopt its interpretation of RCW 82.29A.020 by considering (1) the statute's plain meaning, (2) the regulations defining possession for this statute, and (3) the rules of construction applicable to tax statutes.[2] We hold that a plain meaning analysis resolves the issue in the Department's favor.[3]

The interpretation of a statute is a question of law reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). When interpreting a statute, "[t]he court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Campbell & Gwinn*, 146 Wn.2d at 9-10. Each word in a statute receives its common and ordinary meaning, unless the word is ambiguous or defined in the statute. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009). If

---

[2] Crystal Mountain also argues that the trial court "misapplied" the law by drawing an analogy to criminal law and concluding that possession need not be exclusive. Br. of Appellant at 42. Because our review is de novo, we do not address this argument. *See Texaco Ref. & Mktg., Inc. v. Dep't of Revenue*, 131 Wn. App. 385, 400, 127 P.3d 771 (2006).

[3] Because we hold that plain meaning analysis resolves the meaning of RCW 82.29A.020, we do not reach Crystal Mountain's other arguments.

5

there is any doubt in the meaning of a tax statute, a court must construe the statute against the

taxing power and in favor of the taxpayer. *Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d

392, 396-97, 103 P.3d 1226 (2005). But where the meaning of a statute is plain, there is no

doubt in its meaning and we do not construe it at all. *HomeStreet*, 166 Wn.2d at 452; *see*

*Agrilink*, 153 Wn.2d at 399 n.1.

Crystal Mountain argues that, according to the statute's plain meaning, a taxable

"leasehold interest" exists only when the leaseholder has control over and exclusive possession

of the land. We disagree.

We discern a statute's plain meaning from indicia of legislative intent in the statute.

*Campbell & Gwinn*, 146 Wn.2d at 11. We may also consider related statutes and background

facts that were presumably known to the legislature when enacting the statute. *Campbell &*

*Gwinn*, 146 Wn.2d at 11.

The statute defines a "leasehold interest" as

an interest in publicly owned real or personal property which exists by virtue of
any lease, permit, license, or any other agreement, written or verbal, between the
public owner of the property and a person who would not be exempt from
property taxes if that person owned the property in fee, granting possession and
use, to a degree less than fee simple ownership.

RCW 82.29A.020(1).[4] Plainly, the adjectival phrase "to a degree less than fee simple

ownership" modifies the nouns "possession and use." RCW 82.29A.020(1). Thus, any

agreement creating a leasehold interest grants rights of possession and use that are less extensive

than the rights enjoyed by an owner of land in fee simple. *See* RCW 82.29A.020(1).

---

[4] The legislature amended RCW 82.29A.020, effective July 1, 2012. LAWS OF 2012, 2d Spec. Sess., ch. 6, § 501. The amendment does not affect our analysis; it made technical changes and narrowed "leasehold interest" to exclude preferential uses in cargo cranes and docks.

Possession is not defined in chapter 82.29A RCW. Crystal Mountain urges us to adopt *Webster's Third New International Dictionary*'s definition, which equates control with possession.[5] We decline.

A court may consult a dictionary to determine the plain meaning of an undefined term. *HomeStreet*, 166 Wn.2d at 451. But "[w]here a term is not defined in a statute, it is presumed that the Legislature intended it to mean what it did at common law." *In re Blazier Forest Prods., Inc.*, 106 Wn.2d 588, 595, 724 P.2d 970 (1986). Thus, a dictionary definition is not appropriate when the legislature uses a term, such as possession, which is imbued with legal meaning.

Possession does not have a sole meaning applicable in all contexts of legal or common speech. *Boeing Airplane Co. v. Firemen's Fund Indem. Co.*, 44 Wn.2d 488, 496-97, 268 P.2d 654 (1954) (quoting *Nat'l Safe Deposit Co. v. Stead*, 232 U.S. 58, 67, 34 S. Ct. 209, 58 L. Ed. 504 (1914)), *abrogated on other grounds by Berg v. Hudesman*, 115 Wn.2d 657, 666-67, 801 P.2d 222 (1990). When a statute does not define a term and the term's meaning depends on the circumstances in which it is used, the court interpreting the term must examine the subject, context, and purpose of the statute. *Retail Store Emps. Union, Local 1001 v. Wash. Surveying & Rating Bureau*, 87 Wn.2d 887, 897-98, 558 P.2d 215 (1976) (interpreting "ownership").

The language of chapter 82.29A RCW discloses the legislature's clear intent in enacting the leasehold excise tax statute. In the statute's findings clause the legislature recognized that "private lessees of [publicly owned property] receive substantial benefits from governmental services provided by units of government," even though the properties are exempt from the real

---

[5] According to Crystal Mountain, possession is "'the act or condition of having in or taking into one's *control*[.]'" Br. of Appellant at 19 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1770 (2002 ed.)). Crystal Mountain considers no other definition.

property tax. RCW 82.29A.010(1)(a). The legislature found that private lessees of publicly owned property "are entitled to those same governmental services," and it enacted the leasehold excise tax "to fairly compensate governmental units for services rendered to such lessees." RCW 82.29A.010(1)(c). It is clear from this language that the lessees of public property receive benefits by being in the jurisdiction of a unit of government. The leasehold excise tax ensures that all occupants of public property contribute to the cost of providing the benefits they are entitled to receive. *See* RCW 82.29A.010(1).

The leasehold excise tax is levied "on the act or privilege of *occupying or using* publicly owned real or personal property . . . through a leasehold interest." RCW 82.29A.030(1) (emphasis added). A leasehold interest is an agreement "granting possession and use" of publicly owned property. RCW 82.29A.020(1). Thus, the leasehold excise tax statute treats possession and occupancy as interchangeable concepts.

To ascertain a statute's meaning, we may also look to related statutes. *Campbell & Gwinn*, 146 Wn.2d at 11. The legislature enacted the leasehold excise tax together with an exemption from the real property tax; thus these two statutes are related. LAWS OF 1975-1976, 2d Ex. Sess., ch. 61 (codified at chapter 82.29A RCW and RCW 84.36.451). The exemption ensures that the leasehold excise tax will apply only where the real property tax does not. *See Duwamish Warehouse Co. v. Hoppe*, 102 Wn.2d 249, 254, 684 P.2d 703 (1984). For this reason, we must interpret chapter 82.29A RCW in harmony with RCW 84.36.451. *Wash. Mut. Sav. Bank v. Dep't of Revenue*, 77 Wn. App. 669, 677, 893 P.2d 654 (1995). RCW 84.36.451(1) provides a real property tax exemption for "rights to occupy or use" publicly owned property. RCW 82.29A.020(1) imposes the leasehold excise tax on rights created by agreements "granting

possession and use" of publicly owned property. In a harmonious interpretation of the two statutes, possession and occupancy are the same.[6]

This interpretation is reinforced by the context in which "possession" appears in RCW 82.29A.020(1), because the subsection that defines leasehold interests also uses possession and occupancy interchangeably. The subsection generally defines a leasehold interest as the interest created by an agreement granting possession and use of publicly owned property. RCW 82.29A.020(1). The subsection then mentions two specific kinds of agreements; in doing so, the subsection uses "occupancy" in the place of "possession." First, the subsection states that the term "leasehold interest" includes all agreements granting "the rights of *use or occupancy*" of historical sites owned by public corporations and authorities. RCW 82.29A.020(1) (emphasis added). Second, the subsection states that "leasehold interest" excludes agreements granting "rights of *access, occupancy, or use*" solely for the purpose of (a) removing materials or products purchased from the owner of public property or (b) exploring natural energy resources. RCW 82.29A.020(1) (emphasis added). Thus, the subsection defining "leasehold interest" treats possession and occupancy as the same thing.

---

[6] We note that, in at least one case, our Supreme Court has refused to consider related statutes in a plain meaning analysis. *HomeStreet*, 166 Wn.2d at 451-55 (majority opinion), 456-58 (Madsen, J., dissenting). But *HomeStreet* does not tell us when this refusal is appropriate. Moreover, our Supreme Court's more recent cases reaffirm the place of related statutes in a plain meaning analysis. *E.g., In re Estate of Bracken*, 175 Wn.2d 549, 580-81, 290 P.3d 99 (2012) (Madsen, C.J., concurring and dissenting); *Flight Options, LLC v. Dep't of Revenue*, 172 Wn.2d 487, 500-01, 259 P.3d 234 (2011); *TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 281, 242 P.3d 810 (2010). Here, related statutes, including other provisions of chapter 82.29A RCW and RCW 84.36.451, shed light on the plain meaning of RCW 82.29A.020(1).

In support of its contrary interpretation, Crystal Mountain asserts that the statutory purpose is to tax "interests in land that carry with them the substantive rights of a leaseholder" without regard to whether the interests are labeled as leases, licenses, or permits. Br. of Appellant at 5. Crystal Mountain then argues that a leasehold interest at common law grants the tenant the power to possess the land to the exclusion of everyone including the landlord. Although this may be true, the statutory definition of "leasehold interest" controls our analysis in this case. *See Neilson ex rel. Crump v. Blanchette*, 149 Wn. App. 111, 117, 201 P.3d 1089 (2009). RCW 82.29A.020(1) "give[s] 'leasehold' a meaning not ordinarily contemplated by that term," and the statutory meaning encompasses agreements that the common law would not. *Mac Amusement Co. v. Dep't of Revenue*, 95 Wn.2d 963, 971, 633 P.2d 68 (1981). Thus the common law definition of leasehold interest is not controlling.

Finally, Crystal Mountain argues that possession, as used in RCW 82.29A.020(1), means *exclusive* possession of and control over the land. This argument ignores the clause stating that a taxable leasehold interest may grant "possession and use, to a degree less than fee simple ownership." RCW 82.29A.020(1). The statute does not define the smallest degree of possession that can create a leasehold interest, and we do not decide that here. Crystal Mountain's occupancy of the land suffices to establish possession within the statute's plain meaning.

When a statute's plain meaning is clear, our inquiry ends without resort to other methods of statutory construction. *HomeStreet*, 166 Wn.2d at 451-52. Accordingly, we do not consider Crystal Mountain's remaining arguments about the statute's meaning.

C.    *The Mac Amusement Rule*

Relying on *Mac Amusement*, 95 Wn.2d 963, Crystal Mountain argues that it is entitled to a refund of paid leasehold excise taxes because the permit does not create a taxable leasehold interest but, rather, gives Crystal Mountain *only* a nontaxable franchise or monopoly right. We disagree.

The leasehold excise tax is assessed as a percentage of the "taxable rent" paid under an agreement creating a leasehold interest. RCW 82.29A.030(1)(a). If an agreement (1) creates a leasehold interest and (2) also grants franchise or monopoly rights, then the calculation of "taxable rent" must exclude the portion of the total rent representing the value of franchise or monopoly rights. *Mac Amusement*, 95 Wn.2d at 967, 970; *see* RCW 82.29A.020(2)(a).

In *Mac Amusement*, the lessee operated a "Fun Forest amusement facility" on publicly owned land at Seattle Center. 95 Wn.2d at 965. In addition to granting the lessee the right to use a certain amount of space, the agreement conferred three other rights: the right to a favorable location with high pedestrian traffic, the exclusive right to operate rides and games at Seattle Center, and the exclusive right to sell food at the Fun Forest. 95 Wn.2d at 965. However, the agreement required a lump–sum payment of rent, without attributing portions of the rent to the different rights under the agreement. 95 Wn.2d at 965. After paying the leasehold excise tax on its entire rent payment, the lessee sued for a partial refund, contending that a portion of the "rent" payment was actually consideration for the three other rights. 95 Wn.2d at 965-66. "Taxable rent" under the statute includes only the consideration given for the leasehold interest; taxable rent does not include any consideration for "'concession or other rights.'" 95 Wn.2d at 967 (quoting RCW 82.29A.020(2)(a)). Our Supreme Court held that the lessee's favorable location

11

was part of its leasehold interest, but the exclusive rights to operate games and sell food were nontaxable franchise or monopoly rights. 95 Wn.2d at 968, 970. Therefore the lessee was entitled to a partial refund. 95 Wn.2d at 965, 973.

Crystal Mountain misapprehends the import of *Mac Amusement*, which decided that "taxable rent" must exclude the value of franchise or monopoly rights, assuming that a leasehold interest exists in the first place. 95 Wn.2d at 970. The lessee in *Mac Amusement* conceded that a leasehold interest existed but sued for a *partial* refund, contending that the lease also granted franchise or monopoly rights. 95 Wn.2d at 965-66. Unlike the lessee in *Mac Amusement*, Crystal Mountain seeks a *full* refund, contending that the permit grants *no* leasehold interest but only franchise or monopoly rights. But, as *Mac Amusement* shows, an agreement can create both a leasehold interest and franchise or monopoly rights, even if the agreement's individual elements constitute either one or the other. 95 Wn.2d at 972-73. If the permit gives Crystal Mountain a leasehold interest, then Crystal Mountain must pay the leasehold excise tax whether or not it also has a franchise or monopoly right. *See* 95 Wn.2d at 972-73. Crystal Mountain has a leasehold interest within the statute's plain meaning; thus its argument fails.[7]

---

[7] We do not decide whether Crystal Mountain also has franchise or monopoly rights under the permit because that question is not before us.

No. 42081-3-II

We hold that, under the statute's plain meaning, Crystal Mountain has possession of the permit area, and thus it has a taxable leasehold interest under RCW 82.29A.020(1). Accordingly, Crystal Mountain is not entitled to a full refund of its leasehold excise tax payments.

Affirmed.

_____
Worswick, C.J.

We concur:

_____
Quinn-Brintnall, J.

_____
Penoyar, J.

13