IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| TARI JANE ANDERSON, | ) | |
| | ) | No. 29927-9-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JANE HESSION, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

FEARING, J. — Defendant Jane Hession is the wife of Dennis Hession, a former

mayor of the City of Spokane. On October 15, 2007, as Jane and Dennis Hession walked

to a mayoral debate, Jane[1] brushed against a sign held by Tari Anderson, a protestor.

Based on this contact, Anderson sued Jane for battery and negligence in small claims

court. Dennis, a licensed attorney, defended the action against his wife. The small

claims court found in favor of Jane Hession. Tari Anderson appealed to superior court

and received a trial de novo on the record. The superior court also found in favor of Jane

Hession.

---

[1] Because the facts involve both Jane and Dennis Hession, we will refer to the
parties often by first name. No disrespect is intended.

On appeal to this court, Anderson raises three major contentions. First, Anderson assigns error to Dennis Hession's participation at the small claims court hearing. Second, Anderson assigns multiple errors to the conduct of her small claims court hearing itself. Third, Anderson generally assigns error to the superior court's findings of fact and conclusions of law. We affirm the lower courts.

## FACTS

Tari Anderson and some of her neighbors gathered at the intersection of Sprague Avenue and Lincoln Street in downtown Spokane to protest the decision of Dennis Hession, then Mayor of Spokane, to transfer garbage collection from alleyways to curbside. This protest preceded a debate between mayoral candidates Dennis Hession and Mary Verner, taking place at the nearby Bing Crosby Theater. News crews were present. The intersection was loud and crowded. Hession supporters stood kitty corner on the southwest and northeast corners, while protesters stood on the southeast and northwest corners.

Dennis and Jane Hession approached the northwest corner of the intersection, walking south on the west[2] side of Lincoln Street towards Tari Anderson. Anderson

---

[2] The superior court found that the Hessions "were walking south on the *east* side sidewalk of Lincoln Street." Clerk's Papers (CP) at 381. (emphasis added). But this appears to be a scrivener's error. The superior court then found that the Hessions headed "east into the crosswalk toward the northeast corner of the intersection." CP at 382. But the Hessions could not head east into the crosswalk if they were already on the east side of Lincoln Street.

2

stood at the northwest corner, her right arm in a sling due to previous injuries, holding a cardboard sign that read "evils of Hession, ignorance, arrogance, obstinacy, untruthfulness." Clerk's Papers (CP) at 65. The Hessions wished to cross the street to visit supporters on the northeast corner of the intersection, before continuing to the debate. Holding hands, the Hessions moved through the protesters, including Anderson, to enter the crosswalk. To make room between the protesters and a light pole, Jane extended her right arm as a buffer. In doing so, Jane made physical contact with Tari's sign.

Based on this contact, Tari Anderson sued Jane Hession in small claims court for battery and negligence. The Honorable Judge Douglas Robinson presided. Tari claimed that Jane pushed her, causing her to lose her balance and rock back, exacerbating injuries to her right shoulder and right foot.

The small claims court allowed Dennis Hession, a licensed Washington attorney, to defend the claim against his wife. The small claims court ruled that "the marital community is subject to any claim which might be found against Jane Hession so [the court finds] that [Dennis Hession] is a party in interest and may be present so he is essentially representing the marital community." CP at 21.

At the small claims court hearing, Tari Anderson and the Hessions each testified and called multiple witnesses. The accounts varied. Most witnesses testified that Jane made contact with Anderson's sign, while Anderson maintained that Jane directly pushed

3

her right shoulder. Some witnesses testified that Anderson moved towards Jane; others testified that she moved away "to give the Hessions room to pass." CP at 69. Detective Ricketts—who investigated whether the incident constituted a fourth degree assault—testified to the results of his investigations. Specifically, Ricketts read statements from multiple witnesses of the incident who were not present for the hearing. The small claims court acknowledged that Tari had been injured, but concluded, "I don't think that it was the force exerted by Jane Hession that caused [Tari] to lose [her] balance." CP at 125.

Anderson appealed to superior court. The superior court read the small claims court trial transcript and then afforded the parties an opportunity to argue the case. Like the small claims court, the superior court concluded that Dennis Hession was a party in interest and thus properly participated in the small claims hearing. The superior court also agreed with the small claims court that Jane Hession did not cause Anderson's injuries. The superior court further concluded that Jane did not breach any duty to Tari; Jane's actions were reasonable under the circumstances; and Jane did not intend to cause harmful or offensive contact.

## ANALYSIS

### Tari Anderson's appellate briefing

Tari Anderson's brief and reply brief appear to assign error to every aspect of the small claims court and superior court hearings. Many of her contentions are unsupported by argument and lack citation to relevant legal authority. Frequently, Anderson cites to

4

her own previous motions as authority and quotes her own testimony to support her contentions. In reviewing her appeal, we have attempted to liberally parse her briefs to identify specific errors to address. We wish to give fidelity to RAP 1.2: "These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits." At the same time, a pro se litigant is not entitled to favoritism and must follow the rules established by this court for an orderly appeal process.

In general, "This court will not review a claimed error unless it is (1) included in an assignment of error or clearly disclosed in the associated issue pertaining thereto, and (2) supported by argument and citation to legal authority." *BC Tire Corp. v. GTE Directories Corp.*, 46 Wn. App. 351, 355, 730 P.2d 726 (1986) (citing *Vern Sims Ford, Inc. v. Hagel*, 42 Wn. App. 675, 683, 713 P.2d 736 (1986), RAP 10.3(a)(5), 10.3(g)). "Whether or not a party sets forth assignments of error for each issue on appeal, this court will reach the merits if the issues are reasonably clear from the brief, the opposing party has not been prejudiced and this court has not been overly inconvenienced." *State v. Grimes*, 92 Wn. App. 973, 978, 966 P.2d 394 (1998).

Dennis Hession's participation as attorney

Tari Anderson first argues that the small claims court erred by allowing Dennis Hession to participate at trial. Under RCW 12.40.080(1), "No attorney-at-law, legal paraprofessional, nor any person other than the plaintiff and defendant, shall appear or participate with the prosecution or defense of litigation in the small claims department

5

without the consent of the judicial officer hearing the case."

The small claims court permitted Dennis Hession to function as an attorney on the basis that his property rights could be impacted by a judgment against his wife. Anderson may assign error to the court's conclusions that the Hession's community property could be implicated. We find no decision standing for the proposition that an attorney may represent his or her spouse in small claims court, regardless of whether the jurisdiction is a community property state, but indirect reasoning supports this conclusion.

Whether Tari Anderson's claims against Jane Hession could implicate the Hession's community property is a mixed question of law and fact, which this court reviews de novo. *Clayton v. Wilson*, 168 Wn.2d 57, 62, 227 P.3d 278 (2010). In general, "'[T]he community is not liable for the torts of [a spouse], *unless* the act constituting the wrong *either* (1) results *or* is intended to result in a benefit to the community *or* (2) is committed in the prosecution of the business of the community.'" *Clayton*, 168 Wn.2d at 63 (quoting *LaFramboise v. Schmidt*, 42 Wn.2d 198, 200, 254 P.2d 485 (1953)). Even if a tort judgment is against one spouse alone, however, "the victim of a separate tort [may] execute his or her judgment against the tortfeasor's interest in community real property in the event that the tortfeasor's separate property and share of community personal property are insufficient to satisfy the judgment." *Keene v. Edie*, 131 Wn.2d 822, 835,

935 P.2d 588 (1997) (extending the holding in *deElche v. Jacobsen*, 95 Wn.2d 237, 622 P.2d 835 (1980)).

When Tari Anderson objected to Dennis Hession's participation at small claims court, the court responded:

> Well an attorney may represent himself in court and in this case you have cited Jane Hession as the defendant but in proper pleading it would be Jane Hession or and naming the husband or the marital community because the marital community is subject to any claim which might be found against Jane Hession so I am going to find that he is a party in interest and may be present so he is essentially representing the marital community.
>
> . . . .
>
> And again I do want to make it a point on the record that Jane Hession is the named-party defendant but any judgment against her would necessarily include the marital community and therefore I find that you are an interested party and may participate in this, not as an attorney, but as a proper party defendant.

CP at 21, 50. In concluding that "the marital community is subject to any claim which might be found against Jane Hession," the small claims court impliedly found that Jane was either acting for the benefit of the community or prosecuting the business of the community when the incident occurred. We agree.

The Hession's marital community could have been liable for Jane's actions under the second prong of *LaFramboise*—"committed in the prosecution of the business of the community." "We broadly construe *LaFramboise*'s second prong." *Clayton*, 168 Wn.2d at 65. "'In this area the concept of 'business' is not narrow and the looseness of the test which the cases developed is better identified as requiring that the spouse be engaged in

7

some community errand, affair, or business at the time of the tort to establish community liability.'" *Clayton*, 168 Wn.2d at 65 (emphasis omitted) (quoting Harry M. Cross, *The Community Property Law (Revised 1985)*, 61 WASH. L. REV. 13, 137 (1986)). At the time of the incident, Jane was accompanying her husband to a debate where he would vie for his continued employment as the Mayor of Spokane. Attending events in support of your spouse's career is part of community business.

Even if Dennis Hession's marital community would not be implicated by a judgment against his wife, the small claims court held authority to allow Dennis to function as an attorney for his wife. RCW 12.40.080(1) expressly grants a small claims court to "consent" to an attorney appearing and participating in a trial. No decision indicates the factors upon which the small claims court should base a decision as to whether to consent. No decision indicates what standard of review we should apply when reviewing whether consent was proper. The statute should be read to give wide discretion to the small claims court, since the statute gives no guidance to the court when determining whether to allow the attorney to appear. Since Dennis Hession's wife was sued, there is sound reason to rule that the small claims court did not err.

Assuming the small claims court committed error in allowing Dennis Hession to participate as an attorney, we would find the error harmless. "[E]rror without prejudice is not grounds for reversal." *Thomas v. French*, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983). Error is prejudicial if it affects, or presumptively affects, the outcome of the trial. *James*

*S. Black & Co. v. P & R Co.*, 12 Wn. App. 533, 537, 530 P.2d 722 (1975). "To establish prejudice, the moving party must show that some actual harm resulted from the violation." *Smith v. Orthopedics Int'l, Ltd., PS*, 170 Wn.2d 659, 672, 244 P.3d 939 (2010). Tari Anderson has failed to show how Dennis Hession's participation in the small claims hearing prejudicially affected its outcome.

The Small Claims Court hearing

Tari Anderson assigns multiple errors to the small claims court hearing. Since the superior court conducted a new trial, we could rule that any errors by the small claims court are irrelevant. Nevertheless, the superior court did not entertain new evidence, but limited itself to reviewing the small claims court trial transcript. In accord with CRLJ 72, RCW 12.36.055 requires that "[t]he appeal from a small claims judgment or decision shall be de novo upon the record of the case, as entered by the district court." Unlike a "trial de novo," where a court conducts a "new trial on the entire case—that is, on both questions of fact and issues of law—conducted as if there had been no trial in the first instance,"[3] a "trial de novo on the record" is limited to reading the trial transcript from below. *Goodman v. Bethel School Dist. No. 403*, 84 Wn.2d 120, 126-28, 524 P.2d 918 (1974) (court does not use the phrase "trial de novo on the record"). Therefore, we

---

[3] BLACK'S LAW DICTIONARY 1645 (9th ed. 2009).

should consider errors asserted by Anderson as to the conduct of trial in the small claims court.

Tari Anderson first contends that the small claims court rendered the hearing too formal by limiting her interaction with witnesses to asking questions. Anderson specifically contends that the small claims court erred by requiring examination and cross-examination of witnesses using questions, rendering the hearing formal in violation of chapter 12.40 RCW. Anderson is correct that the small claims court required that the parties ask questions:

> The one rule I do enforce strenuously is the issue regarding examination and cross-examination. And the reason is that questions frequently devolve or end up in a discussion and sometimes going beyond that, an argument. You will be subject to questioning and also if Mrs. Hession testifies or presents any witnesses, you will be entitled to ask question [sic] of them, but it must be a question.

CP at 19.

Tari Anderson correctly asserts that small claims court is to be informal. The legislature intended, in creating the small claims department, to provide a forum where litigants could obtain speedy, inexpensive and conclusive justice. *State ex rel. McCool v. Small Claims Ct. of Jefferson County Dist. Ct.*, 12 Wn. App. 799, 800, 532 P.2d 1191 (1975). "A formal pleading, other than the claim and notice, shall not be necessary to define the issue between the parties. The hearing and disposition of the actions shall be informal, with the sole object of dispensing speedy and quick justice between the

10

litigants." RCW 12.40.090. "The judge may informally consult witnesses or otherwise investigate the controversy between the parties and give judgment or make such orders as the judge may deem to be right, just, and equitable for the disposition of the controversy." RCW 12.40.080(3). It is not necessary to summon witnesses. RCW 12.40.080(2). There is no right to a jury trial. *Wings of the World, Inc. v. Small Claims Ct.*, 97 Wn. App. 803, 807-08, 987 P.2d 642 (1999).

While we acknowledge the informality of small claims hearings, this court "review[s] trial management decisions for abuse of discretion." *State v. Jaime*, 168 Wn.2d 857, 865, 233 P.3d 554 (2010). Despite requiring parties to ask witnesses questions, Judge Robinson kept the hearing informal, explaining what was occurring as it occurred—including the amount in controversy limit of $5,000, what evidence would be admitted, and how the hearing would proceed. The small claim court's imposition of some structure should not be considered an abuse of the court's discretion. Without formal questioning, witnesses could ramble aimlessly thereby prolonging the trial and causing confusion.

Tari Anderson next contends the small claims court erred when allowing Dennis Hession to provide impeachment evidence against witness Henry Valder. When the rules of evidence apply, a trial court's decision to exclude or admit evidence is entitled to deference and "will be reversed only where the trial court has abused its discretion." *State v. Lord*, 161 Wn.2d 276, 294, 165 P.3d 1251 (2007). But ER 1101(c)(3) expressly

11

exempts "small claims court" from applying the Rules of Evidence, "(other than with respect to privileges, the rape shield statute and ER 412)" [regarding a victim's prior sexual history]. Thus, the small claims court has even broader discretion for evidentiary matters. The small claims court recognized this role, stating "[n]ow the rules for evidence in the Small Claims Court are fairly relaxed. The idea is for me to get all of the evidence that is reasonably reliable and make the best decision that I can based on that evidence." CP at 19.

> In relevant part, Dennis Hession testified as follows:

> Henry Valder. Henry Valder is a—and I don't say this in a derogatory way. I say it by way of explanation. Henry Valder is a homeless person. Sometimes he has a residence and sometime he doesn't. And I say that because it gives you a little bit of perspective about the ability of the detective to locate and engage him. Henry and I have had our differences. He used to— when I was on the City Council and when I was the Council President, particularly the Council President running the Council, he was there every week, virtually every week, with his dog. And Henry has an opinion on everything. Henry also got in trouble with me for a couple of things. Two different occasions at least. One for his misbehavior in the chambers and at one point I actually banned him from the chambers, because he was so disruptive. He also on one occasion left the podium and came up to me in a threatening way, for which he again lost his privileges to come to City Council. So just by way of objectivity and willingness to say things that perhaps are not true, which we contend are not true; that provides a little bit of context.

CP at 113. The putative purpose of Dennis Hession's testimony was either to show bias, inconsistencies, or both. This is appropriate impeachment evidence. The comment

12

regarding Valder's housing status may have been inappropriate, but it served to explain

Valder's absence. Tari did not object to this testimony at the time. The small claims

court did not abuse its discretion when permitting the testimony.

Tari Anderson also contends that the small claims court erred when it asked

Detective Ricketts questions about his opinion on ultimate issues. The exchange between

the small claims court and Ricketts went as follows:

> THE COURT: ... You concluded that there was contact.
> Based on your investigation, do you believe that Ms. Anderson was
> standing in the way that where Mrs. Hession was progressing
> —just walking on the sidewalk and without having to stepping
> around her, she was in her way or how did that go down?
> DETECTIVE RICKETTS: Tari Anderson was in the area
> where pedestrians travel. Ms. Hession was walking by and she did this
> with the palm of her hand.
> THE COURT: Okay.
> DETECTIVE RICKETTS: Like that.
> THE COURT: So she didn't go out of her way to take a couple
> of steps and shove her or shove the sign or?
> DETECTIVE RICKETTS: I don't have anything corroborating that;
> that indicates that she did that.

CP at 86. Ricketts also testified that based on his investigation he had concluded that

there was not probable cause to submit the case to prosecutors.

Again, there is no discernible error. Even if we applied the Rules of Evidence, ER

704 would permit this line of questioning because the court did not ask Detective Ricketts

to draw legal conclusions. "Testimony in the form of an opinion or inferences otherwise

admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." ER 704.

Tari Anderson next argues that the small claims court committed error by allowing Dectective Ricketts to provide hearsay testimony. Ricketts testified at length to the contents of his criminal investigation of whether Jane Hession assaulted or battered Tari Anderson. Specifically, Ricketts recounted his interviews of Kathleen Binford, Jill Jolly, and Patsy Dunn who each witnessed the incident and the involvement of Senior Deputy Prosecuting Attorney Brian O'Brien who did not. Anderson argues for the admissibility of Binford, Jolly, and Dunn's statements as excited utterances and present sense impressions, but against the statements of Brian O'Brien. Explaining the contents of his report, Ricketts stated, "Deputy Prosecuting Attorney Brian O'Brien had some input in it. He agreed with the results of the investigation and no charges would be filed." CP at 64. There was no other mention of O'Brien at the hearing and Detective Ricketts's report is not in the appellate record.

Under the Rules of Evidence, the O'Brien statement may have been inadmissible hearsay. But given the informality of small claims hearings, Anderson's failure to object to the statement at the hearing, and the exemption for small claims trials from the Rules of Evidence, we find the court committed no error.

Anderson next contends that the small claims court failed to consider notes from her doctors regarding the cause of her injuries. The court admitted and reviewed these

14

letters, but not for the purpose of showing causation. Because we affirm the court's dismissal of Anderson's battery claim for lack of intent and her negligence claim for lack of breach, we need not reach this issue.

## The Superior Court hearing

Tari Anderson appears to contend that the superior court erred by entering unsupported findings of fact and that, without those facts, its conclusions of law falter. Specifically, Anderson may challenge the superior court's findings of fact that the intersection was congested and the superior court's finding of fact that Jane Hession merely "brushed up against the sign held by" her. CP at 382. Based on the invalidity of these findings of fact, Anderson contends that the facts no longer support the conclusions of law.

In her briefs, Tari Anderson expresses general disagreement with the superior court's findings and conclusions. "The Appellant refuses to acknowledge the 'Findings' prepared by Counsel Dennis P. Hession of his incorrect arguments on the grounds of which numerous purported facts that were unsupported by any evidences of record and proposed conclusions of law that are unsupported by any decisional or statutory law." Br. of Appellant at 2-3. Anderson's general assignment of error is insufficient to satisfy RAP 10.3(g). As explained in *State v. Roggenkamp*, 115 Wn. App. 927, 943, 64 P.3d 92 (2003) (footnotes omitted):

15

RAP 10.3(g) requires a separate assignment of error for each finding of fact a party contends was improperly made and a reference to the finding by number. "A general assignment of error to the 'findings of fact,' . . . is insufficient under the rule." Because the assignments of error to the court's findings of fact do not comply with RAP 10.3(g), the trial court's findings become the established facts of the case.

Thus to the extent Anderson fails to assign error to specific findings, we will not review those findings.

Anderson assigns some errors specifically. She assigns error to the small claims court's finding that the intersection was "congested" and the superior court's finding that Jane Hession brushed against Anderson's sign as opposed to pushing her.

"Where the trial court has weighed the evidence, appellate review is limited to determining whether the trial court's findings of fact are supported by substantial evidence, and if so, whether the findings support the conclusions of law and the judgment." *SAC Downtown Ltd. P'ship v. Kahn*, 123 Wn.2d 197, 202, 867 P.2d 605 (1994) (citing *Tacoma v. State*, 117 Wn.2d 348, 361, 816 P.2d 7 (1991)). A finding of fact will not be disturbed if there is substantial evidence to support it. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). Substantial evidence is "evidence sufficient to persuade a fair-minded person of the finding's truth or correctness." *Crystal Mountain, Inc. v. Dep't of Revenue*, 173 Wn. App. 925, 931, 295 P.3d 1216 (2013) (citing *Hegwine v. Longview Fibre Co., Inc.*, 162 Wn.2d 340, 352-53, 172 P.3d 688 (2007)). This court defers to the finder of fact on issues regarding witness

credibility and the weight of conflicting evidence. *Burnside v. Simpson Paper Co.*, 123

Wn.2d 93, 108, 864 P.2d 937 (1994).

Substantial evidence coming from numerous witnesses supported both findings of

the lower courts. Kathleen Binford testified "Jane Hession gave Tari a push. She stated

that the push was like someone brushing someone out of the way." CP at 68-69. Binford

further testified:

> that Jane Hession used her right arm—she stated it was more like a nudge,
> not a push as though she was trying to push someone down. She then
> stated it was not like nudging—it was more like she was pushing Tari out
> of her way, like she wanted her space. She stated that she doesn't believe
> that Jane Hession was trying to knock Tari down.

CP at 69. Patsy Dunn testified that "Jane Hession only used her arm to get Tari Anderson

out of her way. She stated that Tari Anderson was in the personal space of Jane

Hession." CP at 73. Binford and Dunn's testimony support the finding Jane brushed

against, instead of pushed, Tari. When Detective Ricketts "asked Tari Anderson if Jane

Hession hit her stomach or hit the sign," Anderson "stated she hit the sign." CP at 60.

This testimony supports the finding that Jane made contact with the sign first. Taken

together, this evidence is sufficient to persuade a fair minded person that Jane Hession

did not push Tari Anderson but "moved her forearm into position and brushed up against

the sign held by" her. CP at 382.

Anderson next contends that the superior court erred when it dismissed her battery

and negligence claims. This court reviews the superior court's conclusions of law de

novo for whether they are supported by the findings of fact. *In re Washington Builders Benefit Trust*, 173 Wn. App. 34, 65, 293 P.3d 1206 (2013). Assignments of error to conclusions of law "do not bring up for review the facts found, upon which the conclusions are based." *Becwar v. Bear*, 41 Wn.2d 37, 38, 246 P.2d 1110 (1952).

"A battery is '[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent.'" *McKinney v. City of Tukwila*, 103 Wn. App. 391, 408, 13 P.3d 631 (2000) (quoting W. Page Keeton et al., PROSSER AND KEETON ON TORTS § 9, at 39 (5th ed.1984)). For there to be intent to cause harmful or offensive contact, "'the act must be done for the purpose of causing the contact or apprehension or with knowledge on the part of the actor that such contact or apprehension is substantially certain to be produced.'" *Garratt v. Dailey*, 46 Wn.2d 197, 201, 279 P.2d 1091 (1955) (quoting RESTATEMENT (FIRST) OF TORTS, § 13 cmt. d (1934)).

The superior court concluded that Jane Hession did not intend to cause harmful or offensive contact. Instead, the superior court found that Jane "brushed up against" Tari Anderson. The superior court also found that Jane's movement was "reasonably necessary to allow [the Hessions] to pass by." CP at 382. Brushing up against someone does not give rise to a battery, unless the contact was sexual. *See, e.g., Jones v. Spherion Atlantic Enter.*, 493 F. App'x 6, 11 (11th Cir. 2012) ("Hinton's alleged physical contact with Jones, by brushing against her, did not constitute battery pursuant to Florida

18

common law" when the contact was accidental and the plaintiff did not consider the contact to be sexual.)

"A cause of action for negligence requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994). The superior court dismissed Anderson's negligence claim because (1) Jane Hession did not breach any duty and (2) the contact between the parties was not the proximate cause of Tari Anderson's injuries.

"Duty is the duty to exercise ordinary care, or, alternatively phrased, the duty to exercise such care as a reasonable person would exercise under the same or similar circumstances. Breach is the failure to exercise ordinary care, or alternatively phrased, the failure to exercise such care as a reasonable person would exercise under the same or similar circumstances. Breach is also called 'negligence.'" *Mathis v. Ammons*, 84 Wn. App. 411, 416, 928 P.2d 431 (1996) (footnotes omitted). The superior court ruled there was no breach. The superior court found that Jane Hession's actions were reasonable under the circumstances. "The acts of the Respondent were merely defensive, protecting herself and her husband from the intrusion by the Appellant and only to such a degree reasonably necessary to allow them to pass by." CP at 382. Specifically, Jane was reasonable in putting her arm out in order to pass because Tari Anderson had impeded the

19

Hessions' ability to enter the crosswalk. These findings support the conclusion that Jane

Hession did not fail to exercise such care as a reasonable person would exercise under

like or similar circumstances.

## Motion to supplement record

On August 30, 2013, Tari Anderson moved to supplement the record.

Specifically, Anderson asked this court to accept as part of the appellate record a

December 20, 2007 medical record from Dr. Roger Hanson.[4]  By clerk's ruling, this court

denied the August 30, 2013 motion to supplement the record on September 10, 2013.  On

September 30, 2013, Tari Anderson moved to modify the September 10, 2013 ruling

pursuant to RAP 17.7.

The medical records concern any damages sustained by Tari Anderson.  Thus,

they hold no relevance to the issues decided by this court.  Therefore, we deny the motion

to supplement as moot.

## CONCLUSION

We affirm all small claims court and superior court rulings.

---

[4] We do not know if Anderson also seeks, by her motion to modify, to include, as part of the court of appeals record, an August 29, 2013 letter from Scott Knutson. Assuming she does, our ruling would remain the same.

20

No. 29927-9-III
*Anderson v. Hession*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Fearing, J.

WE CONCUR:

Korsmo, C.J.

Brown, J.

21