FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JANUARY 11, 2024

_González, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JANUARY 11, 2024

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ROYAL OAKS COUNTRY CLUB, a Washington nonprofit corporation, | ) ) ) | No. 101770-7 |
| Respondent, | ) ) | |
| v. | ) ) | En Banc |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | ) ) ) ) | |
| Petitioner. | ) ) | Filed: <u>January 11, 2024</u> |

MADSEN, J.—RCW 82.04.4282 permits taxpayers to deduct from their business and occupation (B&O) tax "bona fide" initiation fees and dues, among other things. Dues in exchange for or graduated on receipt of goods and services cannot be deducted. RCW 82.04.4282. Royal Oaks Country Club sought to deduct its initiation fees pursuant to this provision. New members are admitted to the club based on a one-time initiation fee, which varies based on membership level. Prior to using any of Royal Oaks' dining services or golfing, swimming, or fitness facilities, members must pay both their initiation fee and first month's dues. Because the initiation fee alone does not

automatically entitle a member to use any service or facility, the fee is paid solely for the privilege of membership. The Court of Appeals held Royal Oaks' fee qualifies as a bona fide initiation fee and is therefore wholly deductible. We affirm.

## BACKGROUND[1]

Royal Oaks is a nonprofit corporation that owns and operates a country club in Vancouver, Washington. Royal Oaks maintains a golf course with accompanying practice ranges and a retail shop, as well as swimming facilities, a clubhouse with four primary dining areas, other bars and dining spaces, and a fitness center.

Royal Oaks offers individual and corporate memberships at different levels. The most expensive memberships are "proprietary," "corporate," and "intermediate." Proprietary members may access all services and facilities; they can serve as directors and officers and vote in elections for these offices; proprietary membership may be transferred to another person in a member's immediate family; and resignation of a proprietary membership may yield a "refund equity." Clerk's Papers (CP) at 46-47. Similarly, corporate members may access all facilities and services. Intermediate members may also access all of Royal Oaks' facilities and services. Intermediate members pay half dues until reaching a certain age, at which point their membership is converted to proprietary. These members cannot vote for or serve as directors or officers, and their memberships are not transferrable.

---

[1] Unless otherwise noted, Royal Oaks stipulated to the facts contained in this section. The facts are not disputed here.

"Social with golf" members have limited access to golfing facilities but have full access to the fitness center, swimming facilities, dining, and social events. CP at 47. These members are allowed one round of golf monthly and on that day may access golfing facilities and services. They may purchase additional rounds of golf from winter to spring by paying green fees. Like intermediate members, social with golf members cannot participate in elections or governance of the club. "Social" members cannot use the golf course or practice facilities but have unlimited access to the other facilities. *Id.* Social members cannot participate in club governance.

Finally, "dining" members cannot access the golf course, golf-related practice facilities, or the swimming and fitness centers. Dining members have unlimited access to the dining services. Like social with golf and social members, dining members cannot participate in club governance.

New members must pay a one-time initiation fee. The fee is due along with the application for membership. Members must pay the initiation fee and their first month's dues before accessing any facility, service, or social event at Royal Oaks. Nonmember guests must pay "green fees" to access the golf course and other golfing facilities. CP at 100.

Initiation fees are tied to membership level, as are monthly dues. Members received monthly statements of accounts that included their monthly dues and other debts (e.g., green fees and dining charges). If a member was more than 60 days late in payment, Royal Oaks suspended all member privileges until payment was made.

Royal Oaks had not historically sought a deduction for bona fide initiation fees. In 2014, it claimed the deduction. This led to an audit for the 2011-2016 tax period. The auditor divided Royal Oaks' income accounts into three categories: dues, retail, and service. The auditor placed the one-time initiation fees, monthly dues, and other types of income into the dues category and then calculated the deductible percentage of bona fide dues at approximately 65 percent. This percentage was derived from former Rule 183's "cost of production" method.[2] The parties stipulated that the Washington State Department of Revenue (DOR) assessed $2,640 in retail B&O tax and $45,245 in retail sales tax on Royal Oaks' initiation fee receipts for the tax period.

Royal Oaks sought administrative review of the assessment, arguing the initiation fees were "solely capital contributions" and therefore completely deductible under RCW 82.04.4282. CP at 106. Noting that Royal Oaks failed to provide any contractual or bylaw language "indicating the nature of its initiation fees," the hearing examiner denied the initiation fee argument and affirmed the audit. *Id*. at 109.

On reconsideration, Royal Oaks provided documentation on its initiation fees. According to Royal Oaks, this documentation showed the fees were purely for entry and thus fully deductible. The tax review officer concluded the documentation did not

---

[2] This calculation method is discussed in the auditor's ruling. CP at 107, 113. Washington State Department of Revenue applies this calculation to taxpayers who do not "segregate the portion of their initiation fees (or dues . . .) attributable to providing the privilege of membership from the portion attributable to providing taxable goods and services." Pet. for Rev. at 6; former WAC 458-20-183(4)(c)(ii) (1995) (in effect during the relevant taking period 2011-2016). The cost of production method was repealed shortly after Royal Oaks' audit. The repeal did not affect the outcome of Royal Oaks' case. Nor is it disputed here.

describe whether the fees were considered solely capital contributions or if the fees entitled new members to goods and services, and denied reconsideration.

Royal Oaks paid the tax assessment and filed a refund action in superior court. Royal Oaks maintained that the initiation fees were statutorily deductible. The parties filed cross motions for summary judgment. The court granted DOR's motion and denied Royal Oaks' motion, ruling the initiation fees were only partially deductible.

The Court of Appeals held the initiation fees were wholly deductible based on RCW 82.04.4282 and reversed the superior court's grant of summary judgment. *Royal Oaks Country Club v. Dep't of Revenue*, 25 Wn. App. 2d 468, 469, 476-81, 523 P.3d 1198 (2023). DOR petitioned for review here, which we granted.

ANALYSIS

Summary judgment decisions are reviewed de novo, considering the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015) (citing *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998)). Summary judgment is appropriate only when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 444, 334 P.3d 541 (2014)). When the issue is how a tax statute applies to the facts of a case, the reviewing court treats the issue as a question of law and reviews it de novo. *Wash. Imaging Servs., LLC v. Dep't of Revenue*, 171 Wn.2d 548, 555, 252 P.3d 885 (2011).

5

The parties disagree whether Royal Oaks' initiation fees are wholly deductible under RCW 82.04.4282. Therefore, this case presents a question of statutory interpretation, which we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). The primary objective is to "ascertain and carry out the Legislature's intent." *Id.* If the meaning of the statute is plain on its face, we give effect to that plain meaning as an expression of legislative intent. *Id.* at 9-10. We discern plain language from the ordinary meaning of the language in the context of related statutory provisions, the entire statute, and related statutes. *Id.* at 9-12. To determine the ordinary meaning of an undefined term, we may look to dictionaries. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990).

RCW 82.04.4282 concerns certain deductions to the B&O tax. A B&O tax is assessed "for the act or privilege of engaging in business activities." RCW 82.04.220(1). "Business" includes "all activities engaged in with the object of gain, benefit, or advantage to the taxpayer or to another person." RCW 82.04.140. Retail sale is one classification of business activity that can determine the B&O tax rate. RCW 82.04.250. During Royal Oaks' 2011-2016 audit, "retail sales" included provision of "amusement and recreation services including but not limited to golf," "[p]hysical fitness services," and swimming services. Former RCW 82.04.050(3)(a), (g) (2011). The B&O tax applies broadly, and deductions are construed narrowly. *Avnet, Inc. v. Dep't of Revenue*, 187 Wn.2d 44, 49-50, 384 P.3d 571 (2016) (plurality opinion); *Budget Rent-A-Car of Wash.-*

*Or., Inc. v. Dep't of Revenue*, 81 Wn.2d 171, 175, 500 P.2d 764 (1972) ("the tax is very broad and the exemptions correspondingly narrow").

RCW 82.04.4282 states,

In computing tax there may be deducted from the measure of tax amounts derived from *bona fide* (1) *initiation fees*, (2) *dues*, (3) contributions, (4) donations, (5) tuition fees, (6) charges made by a nonprofit trade or professional organization for attending or occupying space at a trade show, convention, or educational seminar sponsored by the nonprofit trade or professional organization, which trade show, convention, or educational seminar is not open to the general public, (7) charges made for operation of privately operated kindergartens, and (8) endowment funds. . . . If *dues* are in exchange for any significant amount of goods or services rendered by the recipient thereof to members without any additional charge to the member, *or if the dues* are graduated upon the amount of goods or services rendered, the value of such goods or services shall not be considered as a deduction under this section.

(Emphasis added.)  In other words, a taxpayer may deduct bona fide initiation fees and dues from their B&O tax assessment.  If, however, dues are paid for a "significant amount" of goods or services or if the dues are graduated based on the amount of goods or services rendered, the dues cannot be deducted.  "Bona fide" is a descriptive term that begins .4282's list of qualifying categories and thus modifies each category.

Though "bona fide," "initiation fee," and "dues" are not defined in RCW 82.04.4282 or elsewhere in Title 82 RCW, the terms are defined in the state administrative code.  The code defines an "initiation fee" as "those amounts paid solely to initially admit a person as a member to a club or organization."  Former WAC 458-20-183(2)(i) (2009).  "'Bona fide initiation fees' within the context of [WAC 458-20-183] shall include only those one-time amounts paid which genuinely represent the value of

membership in a club." *Id.* Bona fide fees "shall not include any amount paid for or attributable to the privilege of receiving any goods or services other than mere nominal membership." *Id. Webster's* provides a similar definition—it defines "bona fide" as "**1 :** made in good faith without fraud or deceit," "**2 :** SINCERE," or "**3 :** not specious or counterfeit **:** GENUINE." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 250 (2002). The administrative code defines "dues" as "those amounts periodically paid by members solely for the purpose of entitling those persons to continue membership in the club or similar organization." WAC 458-20-183(2)(e). Receipt of goods and services rendered are not included as "dues." *Id.*

For the first sentence of RCW 82.04.4282, a "bona fide" "initiation fee" therefore means a genuine fee paid for the act of formal initiation into an organization and does not include any amount paid for receiving goods or services rendered.

DOR and Royal Oaks interpret this statute differently. On one hand, DOR does not argue that Royal Oaks' initiation fee is not a "bona fide" initiation fee but, instead, that a portion of the initiation fee was for access to facilities. That portion is not subject to the exemption, DOR alleges, because it interprets services and access as being the same pursuant to RCW 82.04.4282. Under DOR's interpretation, all three sentences in .4282 demonstrate that only a portion of the challenged initiation fees is deductible. On the other hand, in Royal Oaks' view, its initiation fees are distinct from dues and the fees paid by Royal Oaks' members constitute bona fide admittance fees paid solely for the privilege of becoming part of the club. We agree with Royal Oaks.

8

First Sentence

The first sentence of RCW 82.04.4282 lists bona fide fees that qualify for a B&O tax deduction. The statute lists initiation fees and dues separately. RCW 82.04.4282(1)-(2). "When the legislature uses two different terms in the same statute, courts presume the legislature intends the terms to have different meanings." *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 219, 173 P.3d 885 (2007). Although "bona fide" modifies all categories of fees, the categories represent different types of fees. Initiation fees are not the same as dues. Dues are addressed separately in the final sentence of the statute.

Here, Royal Oaks' initiation fees were tied to membership levels. Those levels allow members to access certain services and facilities, as well as non-goods-and-services such as the proprietary-only members' participation in corporate governance. Regardless of membership type (and consequently, initiation fee), no Royal Oaks member could use *any* service or facility until they paid their initiation fee *and* first month's dues. Members received monthly statements of accounts, which included their monthly dues and other debts. If a member was delinquent in payment over 60 days, Royal Oaks would suspend all privileges until payment was made. Members pay for the privilege of access to goods and services, but use of goods and services is paid by monthly dues that are billed separately—for which Royal Oaks is not seeking a deduction in this case. Royal Oaks' initiation fees are not tied to the receipt of goods or services.

DOR has argued that the initiation fees can be explained only by receipt of goods and services. For example, DOR says the $200 dining initiation fee represents the sole

level of membership that receives no goods or services and is the only bona fide fee. The additional thousands of dollars for higher-level membership, according to DOR, are paid in exchange for retail services: unlimited access to golf, swimming, and fitness facilities.

As noted, however, even the most expensive membership does not automatically entitle that member to use the golf, swimming, and fitness facilities. Those members, like all members, must pay their first month's dues in order to use (in an unlimited or limited capacity) any facility and must continue paying dues in order to continue using these facilities. Proprietary members pay more in fees for the ability to vote and serve in governance roles for the club, participate in golf tournaments, transfer memberships, and can receive a refund if they resign. Dining-only members cannot take advantage of those privileges, which do not fall within the statutory definition of "retail sale." Former RCW 82.04.050(3) (2011) (charges for providing golf, swimming, and fitness facilities qualify as "retail sale" and are subject to B&O tax).

Moreover, if DOR is correct that *access* determines whether a fee is bona fide, none of Royal Oaks' initiation fees would qualify—including the $200 dining member initiation fee. Even this initiation fee amount, the lowest available option, provides *access* to Royal Oak facilities and services, i.e., unlimited access to dining.[3] Indeed,

---

[3] During the 2011-2016 taxing period, provision of golf, swimming, and fitness facilities qualified as a "retail sale" and was subject to B&O tax. Former RCW 82.04.050(3)(a), (g) (2011) (stating that "'sale at retail'" includes "[a]musement and recreation services including but not limited to golf . . . personal services: [p]hysical fitness services"). In 2015, lawmakers amended the provision, clarifying that personal services such as "[o]perating an athletic or fitness facility" fell under the definition of a retail sale and "includ[es] all charges for the *use* of such a facility." LAWS OF 2015, ch. 169, § 1(3)(g)(i) (emphasis added). This change to the definition of retail sale was not intended to provide exemptions but to clarify what is and is not subject to

DOR "was unable to identify any situation where an initiation fee would be fully deductible" at oral argument before the Court of Appeals. *Royal Oaks*, 25 Wn. App. 2d at 476 n.2 (citing *Royal Oaks Country Club v. Dep't of Revenue*, No. 56478-5-II (Oct. 20, 2022), at 24 min., 13 sec. through 25 min., 6 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org).

The record shows that Royal Oaks' members paid their initiation fees one time. The fees were assessed "up front as a cost of entry into the membership of the club. They [were] not based on how long [one] use[d] the club." Rep. of Proc. at 6. Royal Oaks did not collect the fees incrementally throughout the year or prorate the fee, nor does it appear the audit viewed them as such. There is no indication the initiation fees were treated as anything other than a single admittance fee.

Royal Oaks' members must pay their first month's dues prior to using any club facility and continue to pay dues to use the facilities. Dues are paid separately from initiation fees. Royal Oaks does not seek an exemption for dues, which pay for the services that members receive. We hold that Royal Oaks' initiation fees constitute "bona fide" "initiation fees" pursuant to the first sentence in RCW 82.04.4282.

---

taxation. H.B. REP. ON H.B. 1550, at 3, 64th Leg., Reg. Sess. (Wash. 2015). While the 2015 amendment did not apply during all of Royal Oaks' audit, DOR acknowledges that the statute has been reorganized but "remains largely unchanged." DOR's Suppl. Br. at 4 n.1. The 2015 amendment did not change the fact that fitness facilities were subject to B&O taxation as a retail sale, but it clarified that charges for such services included specifically the "use" of the facility.

Second Sentence

DOR makes a passing argument that the second sentence of RCW 82.04.4282 also demonstrates that "bona fide" precludes deducting fees that entitle access. The relevant portion of .4282 states that "providing facilities or other services for which a special charge is made to members or others" does not exempt an entity from tax liability. DOR argues that Royal Oaks' graduated initiation fees and monthly dues were a form of "'special charge'" assessed to members "'upon providing facilities.'" DOR's Suppl. Br. at 23 (quoting RCW 82.04.4282).

As the Court of Appeals explained, Title 82 RCW does not define the term "special charge" and the court looked to the dictionary for guidance. *Royal Oaks*, 25 Wn. App. 2d at 479. *Webster's* defines "special" to mean "'supplemental to the regular,'" "'confined to a definite field of action **:** designed or selected for a particular purpose, occasion, or other end,'" or "'containing particulars **:** DETAILED, SPECIFIC – opposed to *general*.'" *Id.* (quoting WEBSTER'S, *supra*, at 2186). According to the Court of Appeals, a "special charge" is supplemental to regular charges or one specifically designed for a particular purpose. *Id*. In the context of the parties' arguments in this case, "these charges must be specifically designed or selected for the use of Royal Oaks' facilities or services." *Id*. The parties do not challenge this definition.

DOR claims that club members pay a "surcharge on their initiation *fees and dues* in exchange for facility access" that would ordinarily be charged to nonmembers, such as guests paying green fees. DOR's Suppl. Br. at 23-24 (emphasis added). This argument

conflates initiation fees and dues in the first sentence of .4282, which treats initiation fees and dues separately. Further, it assumes access means use, yet the sole illustration of the department's point concerns only use—nonmembers pay green fees to use the golf course. There is a difference, however, between *use* and *access*. Certain members with *access* must also pay green fees. Social membership with golf privileges allows use of Royal Oaks' facilities for all social events, excluding special club tournaments, and allows for play on one day a month or a maximum of 12 times a year. Additional rounds can be played during November to April, "if green fees are paid." CP at 85.

The Court of Appeals also reasoned that nothing in the record indicates that the one-time initiation fees were designed for anything other than club membership. *Royal Oaks*, 25 Wn. App. 2d at 479. Green fees concern only use and must be paid by certain members in their monthly dues, in addition to initiation fees. As the court noted, these green fee charges in a monthly dues statement arguably constitute "special charges" because they are "supplemental to the regular dues for the use of the club's facility and services," *id*., but no such charges are built into the initiation fee. *Id.* at 480. Royal Oaks does not seek to deduct monthly dues as bona fide exempt fees. We agree with the Court of Appeals' reading of the second sentence of RCW 82.04.4282.

Third Sentence

Finally, DOR argues that the third sentence of .4282 applies to initiation fees as well as dues. This argument is contrary to the plain language of the statute.

The sentence at issue states,

13

> If *dues* are in exchange for any significant amount of goods or services rendered by the recipient thereof to members without any additional charge to the member, or if the *dues* are graduated upon the amount of goods or services rendered, the value of such goods or services shall not be considered as a deduction under this section.

RCW 82.04.4282 (emphasis added). The first sentence of .4282 lists separately dues and initiation fees that must be "bona fide" in order to be deducted. The final sentence provides additional limitations on dues.

DOR contends that the final sentence applies equally to initiation fees despite the plain language identifying only dues. Instead of addressing the language of the statute itself, the department relies on three cases for support: *Red Cedar Shingle Bureau v. State*, 62 Wn.2d 341, 382 P.2d 503 (1963), *Group Health Cooperative of Puget Sound, Inc. v. Washington State Tax Commission*, 72 Wn.2d 422, 433 P.2d 201 (1967), and *Automobile Club of Washington v. Department of Revenue*, 27 Wn. App. 781, 621 P.2d 760 (1980) (*Auto Club*). These cases are distinguishable.

In *Red Cedar*, the Red Cedar Shingle Bureau operated as a nonprofit trade association that, among other things, worked to prevent antishingle ordinances and legislation. 62 Wn.2d at 342, 344-46. Pursuant to the bureau's bylaws, members paid a certain amount for every bundle of shingles manufactured "'in consideration of the services rendered and to be rendered by the corporation.'" *Id.* at 346.

The bureau claimed its revenues were dues or contributions and therefore deductible. *Id.* Under former RCW 82.04.430(2) (1961) (the substantially similar predecessor to RCW 82.04.4282), taxpayers could deduct from their B&O tax

14

"'[a]mounts derived from bona fide initiation fees, dues, contributions, donations, tuition fees, and endowment funds. . . . Dues which are for, or graduated upon, the amount of service rendered by the recipient thereof are not permitted as a deduction hereunder.'" *Id.* This court concluded that the "ordinary everyday meaning" of "dues" did not mean payments such as those made to trade associations for the types of services rendered by the bureau. *Id*. at 346-47.

The court offered an additional holding. *Id.* at 347 (stating, "[i]f there is any doubt as to the meaning of the word 'dues,' . . . the position taken by the Bureau is untenable for another reason"). A bureau member's payments were proportionate to the size and volume of that member's business, and the benefits each member derived were roughly proportionate to their share of the market. *Id.* Since payments were based on a member's business production, they were "'graduated upon, the amount of service rendered'" and did not qualify as dues, contributions, donations, or tuition fees and thereby were not permissible deductions. *Id*. (quoting former RCW 82.04.430(2)).

*Red Cedar* held that because member payments were based on that member's production, they fell "clearly within the proviso of RCW 82.04.430(2)" and negated "consideration of such payments as dues or contributions, donations, tuition fees." *Id.* Simply put, the dues payments did not meet any of the other categories of the deduction. This statement does not apply the court's dues logic to contributions, tuition, etc. The court meant only that the payments were in consideration for services, thus they qualified

as dues in exchange for services rendered and did not qualify as any other listed category of permissible deduction.

Moreover, the court did not include "initiation fees" in the statement above. *Id*. ("Falling . . . clearly within the proviso of RCW 82.04.430(2) negatives consideration of such payments as dues or contributions, donations, tuition fees."). That is because the bureau did not seek a deduction for any initiation fees; it argued only that its revenues constituted bona fide dues or contributions. Reading *Red Cedar* as applicable to allegedly bona fide dues comports with the plain language of former RCW 82.04.430(2) and its current iteration, RCW 82.04.4282. Expanding that reading to initiation fees, as DOR urges, is problematic considering the plain language of the statute. Former RCW 82.04.430(2), like RCW 82.04.4282, expressly excluded "dues" graduated on services rendered and said nothing of contributions, let alone initiation fees. Agreeing with DOR's interpretation of *Red Cedar* conflicts with the plain language of both former .430(2) and .4282.

In the same vein, DOR relies on *Group Health* to argue the challenged initiation fees are akin to dues that are in fact payments made in exchange for services. Group Health Cooperative operated as a nonprofit corporation providing medical and hospital care. *Group Health*, 72 Wn.2d at 423. Individual members paid an entrance fee and monthly "medical dues," which supported operational expenses. *Id.* at 424. B&O taxes were assessed against Group Health's gross revenue, derived from its members' dues that were attributed to the services furnished by certain clinics. *Id.* at 425. Group Health

claimed its monthly fees constituted "bona fide dues" that were deductible under former RCW 82.04.430(2). *Id*. at 433. This court disagreed, reasoning that the monthly fees were related to or graduated on the cost of operation, which in turn reflected the services available and furnished to individual members. *Id.* at 434. All services were "geared to the aggregate of the monthly fees received or anticipated for operational expenses over a given period of time." *Id.* Thus, *Group Health* held that the monthly fees did not qualify as a permissible deduction because they constituted dues "'graduated upon, the amount of *service* rendered.'" *Id*. (emphasis added) (quoting former RCW 82.04.430(2)).

*Group Health* considered allegedly bona fide dues whereas the present case involves initiation fees. For this reason alone, *Group Health* is inapposite. DOR also argues that *Group Health* "grounded its holding in the statutory term 'bona fide'—a term that modifies 'initiation fees' as well as 'dues.'" Pet. for Rev. at 23. DOR is partially correct. Bona fide does modify initiation fees and dues in RCW 82.04.4282. However, to the extent this argument casts *Group Health* as interpreting "bona fide" and applying that term to any category it modifies, DOR misreads our decision. At issue in *Group Health* was whether monthly fees constituted deductible dues. This court made no specific holding about the term "bona fide" divorced from dues. Whether a category of fees is "bona fide" will depend on the nature of the fee. *Group Health* does not support DOR here.

Finally, similar to *Group Health*, *Auto Club* involved only membership dues. 27 Wn. App. at 783-84. There, Auto Club members paid a one-time enrollment fee and

annual dues. *Id.* at 782. The club had been allowed to deduct its dues, but DOR changed its policy and precluded the deduction. *Id.* at 782-83. On appeal, the club challenged whether the services provided to its members referred to the amount of services each member received or the aggregate amount provided. *Id.* at 783-84 (citing former RCW 82.04.430(2)). *Group Health* had already rejected this argument and decided that the correlation (if any) between the totality of services and the aggregate of dues received is the determining factor for whether dues were for "'the amount of service rendered.'" *Id.* at 784 (quoting former RCW 82.04.430(2)). The Auto Club's dues accounted for 75 percent of total income, and the dues were increased three times based on increased cost of service. *Id.* at 785. Consequently, the Court of Appeals concluded that a correlation existed between the total services provided and aggregate *dues* received. *Id.*

In sum, *Red Cedar*, *Group Health*, and *Auto Club* addressed only the deductibility of dues. Contrary to DOR's assertion here, the "logic" of those decisions does not apply to initiation fees. DOR's Suppl. Br. at 17.[4]

The Washington State Board of Tax Appeals appears to agree that dues are not tantamount to initiation fees. *See Black Diamond Gun Club v. Dep't of Revenue*, No. 70949, 2010 WL 3944939 (Wash. Bd. of Tax Appeals Sept. 14, 2010); *Innis Arden*

---

[4] The Court of Appeals held that these cases were also inapposite because they analyzed the predecessor to the current statute, former RCW 82.04.430(2). *Royal Oaks*, 25 Wn. App. 2d at 481. The predecessor provision was revised and recodified in RCW 82.04.4282. DOR appears concerned that the Court of Appeals has called *Red Cedar*, *Group Health*, and *Auto Club* into question. It has not. As DOR explains, the recodification did not change "'the meaning of any of the exemptions or deductions involved.'" DOR's Suppl. Br. at 17 (quoting LAWS OF 1980, ch. 37, § 1). Additionally, the language in both statutes is substantially similar. *Id.* While *Red Cedar*, *Group Health*, and *Auto Club* are distinguishable from this case, they remain good law.

*Swimming Club v. Dep't of Revenue*, No. 93156, 2021 WL 5871836 (Wash. Bd. of Tax. Appeals, Oct. 4, 2021). Decisions from the board are not binding on this court. *See Dep't of Lab. & Indus. v. Granger*, 159 Wn.2d 752, 764, 153 P.3d 839 (2007) (an agency's interpretation of its regulations is afforded deference but does not bind reviewing courts and is inappropriate when the interpretation conflicts with statutory mandates). Nor are they directly before us in this case. Nevertheless, the Court of Appeals below and DOR here both cite the decisions as supporting authorities. *Royal Oaks*, 25 Wn. App. 2d at 480-81; Pet. for Rev. at 24-25. Therefore, we review the board's decisions.

Most relevant to the current case, *Black Diamond* explained that "'[t]he last sentence of RCW 82.04.4282 indicates that if dues are in exchange for any significant amount of goods and services, then they shall not be deductible. There is no such proviso for the category of initiation fees.'" *Royal Oaks*, 25 Wn. App. 2d at 480-81 (quoting *Black Diamond*, 2010 WL 3944939, at *5).

The Black Diamond Gun Club provided educational and recreational shooting practice facilities. *Black Diamond*, 2010 WL 3944939, at *1. New members paid a one-time initiation fee for joining the club and annual dues thereafter. *Id.* at *3. The fees and dues allowed club members unlimited use of the target range and reduced rates for other ranges. *Id.* The club paid no retail sales tax on any fees or dues it collected for a certain number of years. *Id.* at *1. After an audit, the club was assessed for the taxes on those fees. On appeal, the board considered whether the dues and initiation fees were

deductible under RCW 82.04.4282. *Id.* at *1, *2. The board found that the initiation fee was distinguishable from monthly or annual dues, which members paid for goods or services rendered. *Id.* at *5. The board noted that DOR "erroneously" bundled both initiation fees and monthly/periodic dues. *Id.*

Here, DOR claims a more recent board decision holds the opposite. In *Innis Arden*, a taxpayer sought a deduction for initiation fees and dues. 2021 WL 5871836, at *4. "'To qualify for the deduction, initiation fees and dues must be "bona fide" and must pertain solely to the privilege of being a member.'" *Id.* (quoting record). The board noted that DOR had issued excise tax advisories "'to explain how the bona fide dues deduction works.'" *Id.* These advisories treated dues and initiation fees as the same. *Id.* The board then turned to the record: the club's bylaws showed that *dues* were paid for maintenance and operation of club swimming facilities. *Id.* at *5. "The dues [were] therefore not deductible." *Id.* Though this fact was dispositive, the board also explained that membership granted tangible benefits—only members could participate in the swim team or rent the pool. Thus, the "Swimming Club was not entitled to the deduction under RCW 82.04.4282 for any of its dues or initiation fee income." *Id.*

Notwithstanding the excise tax advisories, *Innis Arden* did not explicitly treat dues as tantamount to initiation fees. The board reasoned that as per the club's bylaws, *dues* were paid for maintenance and operation of club facilities and membership granted tangible goods. This alone was "dispositive" to the board. *Id.* Moreover, though the board did not specify, to the extent the additional holding on "membership" was intended

20

to mean initiation fees, the board's reasoning does not conflict with *Black Diamond*. Swimming club membership granted tangible benefits beyond the mere privilege of being a member, therefore the membership/initiation fees were not bona fide pursuant to RCW 82.04.4282. The board's discussion of dues related to goods and services as outlined in the final sentence of RCW 82.04.4282; membership/initiation fees went to tangible benefits and, thus, were not bona fide as provided in the first sentence of RCW 82.04.4282.

We decline DOR's invitation to conflate initiation fees and dues. Rather, we hold that the limitation on the initiation fee exemption is whether the fee is a "bona fide" initiation fee. In the context of an initiation fee, "bona fide" means the fee is for the privilege of membership. Royal Oaks' initiation fee provides membership privileges, including access but not use, which is covered by dues. Thus, the initiation fee qualifies for the exemption under RCW 82.04.4282.

## CONCLUSION

Royal Oak members must pay their first month's dues prior to use of any service or facility regardless of whether members paid a proprietary or a dining-only initiation fee. Royal Oaks' initiation fees allowed nonmembers to become members, assessing a one-time fee for the privilege of membership in the club. We hold, therefore, that the initiation fees are "bona fide" under RCW 82.04.4282 and are fully deductible. Accordingly, we affirm the Court of Appeals and remand to the superior court to enter summary judgment for Royal Oaks.

_____
Madsen, J.

WE CONCUR:

_____
González, C.J.

_____
Gordon McCloud, J.

_____
Johnson, J.

_____
Yu, J.

_____
Owens, J.

_____
Montoya-Lewis, J.

_____
Stephens, J.

_____
Whitener, J.